1805.

## Sherwood *v.* Salmon.

In the Court below,

DANIEL SALMON and SAMUEL BEEBE, *Plaintiffs ;* STEPHEN
SHERWOOD, *Defendant.*

No action
lies against
the vendor
of real estate
for false and
fraudulent
representa-
tions respect-
ing its quali-
ty and situa-
tion.

THIS was an action on the case. The declaration was
as follows: " That on or about the 1st day of December,
" 1794, the defendant applied to the plaintiffs, and proposed
" to sell to them 32,162 acres of land, lying in the Com-
" monwealth of Virginia, being in nine entire pieces, or par-
" cels of land, and part of two other tracts, or pieces, situate
" on the waters of Tyger-valley River, in part, and part on
" the waters of Big Elk River, in the County of Randolph,
" which was formerly a part of Harrison County ; and was
" surveyed for *Joseph* and *Thomas Pennell,* in the year
" 1786 ; and was represented, on a plan, by the following
" numbers, viz. No. 3, of 3000 acres ; No. 6, of 5000
" acres ; No. 8, of 5000 acres ; and 1340 acres, being the
" East part of No. 9 ; these three tracts, together with part
" of the other said tracts, being surveyed for said *Joseph*
" *Pennell ;* Nos. 17 and 20, each containing 2000 acres ; and
" Nos. 23 and 25, each containing 3000 acres ; and 1322
" acres, being the East part of No. 27 ; and No. 28, of 3000
" acres ; and No. 29, of 2000 acres ; said six tracts of land,
" together with the part of a tract, was, and had been, sur-
" veyed for *Thomas Pennell ;* also one other tract of land,
" surveyed for the defendant, for 900 acres, lying in said
" Randolph County, situate on said Elk River, adjoining
" on the North-West side of a tract of land surveyed
" for said *Thomas Pennell,* and known, on the plan above
" mentioned, by No. 26; also one other tract of land,
" surveyed for the defendant, for 600 acres, situate in said
" Randolph County, on Laurel Creek, a branch of said Elk
" River, adjoining a tract of land surveyed for *Thomas*
" *Douglass ;* containing in the whole, said quantity of

" 32,162 acres : And further proposed to sell said several
" tracts of land to the plaintiffs, at the price of 25 cents per
" acre, and to give his deed of the same to the plaintiffs ;
" and to persuade and induce the plaintiffs to purchase the
" same, did, on or about the same 1st day of December, af-
" firm and declare to the plaintiffs, that two thirds of said
" several tracts of land, (said last mentioned 600 acre tract
" excepted) was good, arable land, of an excellent quality ;
" being, one third part of said tracts, level bottom land ;
" one third part, side-hill fine for pasture land ; and the
" other part, good timber land ; the whole of which, (said
" 600 acre tract excepted) was then well worth one dollar
" per acre ; and did further affirm and declare, that said 600
" acre tract was wholly of bottom land, fit for all agricultural
" purposes, without any waste or broken land therein,
" and then was well worth two dollars per acre ; and further
" to induce and persuade the plaintiffs to purchase said sev-
" eral parcels or tracts of land, did exhibit and shew to the
" plaintiffs a certain chart or map of said several pieces of
" land, therein representing large and beautiful streams, or
" rivers, running through the same, thereby the better to
" convince the plaintiffs of the truth of his assertions as to
" the quantity and proportion of bottom lands ; which said
" chart or map was made by the defendant for the purpose
" aforesaid : And the plaintiffs further say, that the defend-
" ant, at divers times and places, previous to the 20th day of
" December, 1794, made each and every of the aforesaid
" declarations and affirmations ; and further, that in case
" they, the plaintiffs, would purchase said lands of him,
" the defendant, at the price aforesaid, they would thereby
" make great gains and profits : And the plaintiffs say,
" that placing full confidence in the declarations and affirma-
" tions of the defendant, made as aforesaid, and verily believ-
" ing the same to be true, on or about said 20th day of De-
" cember, did, in fact, purchase of the defendant each and
" every of the aforesaid tracts or parcels of land, amounting,
" in the whole, to 32,162 acres ; and did, then and there pay
" the defendant therefore the sum of 2,412*l*. 3*s*. lawful money

S

1805.

SHERWOOD
*v.*
SALMON.

" of Connecticut, equal to 8,040 dollars and 50 cents; which
" purchase the plaintiffs made of the defendant as afore-
" said, at the rate of 25 cents per acre : And the plaintiffs
" further say, that thereupon the defendant, for his own con-
" venience, and for the convenience of the plaintiffs, did,
" in fact, deed to the plaintiff, said *Salmon,* the equal and
" undivided moiety of each and every of said tracts of land ;
" which said deed was executed by the defendant, in the pre-
" sence of two subscribing witnesses only, and was acknow-
" ledged before *Richard Varick,* then Mayor of the City of
" New York aforesaid ; and the defendant also executed a
" like deed of the other moiety of said lands, witnessed and
" acknowledged in the same way, and before the same
" Mayor, to the other plaintiff, said *Beebe ;* and to induce the
" plaintiffs to accept of and receive said deeds, executed
" and acknowledged as aforesaid, did affirm and declare to
" the plaintiffs, that said deeds were every way well ex-
" ecuted and acknowledged according to the laws and usages
" of the Commonwealth of Virginia, and so as to vest the
" fee of the whole of said lands in the plaintiffs; and there-
" upon the plaintiffs, placing full faith and confidence in the
" truth of the asseverations last aforesaid, did take said deeds
" respectively : Now the plaintiffs, in fact, say, that all
" and singular the declarations, affirmations, and representa-
" tions of the defendant, made to the plaintiffs as aforesaid,
" were, at the time of making the same, and still are, false
" and fraudulent ; and the defendant, at the time of making
" the same, well knew they were false and fraudulent ; and
" were by him made with a view to cheat, injure, and de-
" fraud the plaintiffs of their property : For the plaintiffs
" more especially say, that two thirds of said several tracts
" of land, (said six hundred acre tract excepted) was not
" good arable land, of an excellent quality ; nor was one
" third part thereof level bottom land ; nor was one third
" side-hill land, fine for pasture ; nor was the other third
" part thereof good timber land ; nor was the whole of said
" land, (said six hundred acre tract excepted) then well
" worth one dollar per acre ; nor was said 600 acre tract

" wholly of bottom land, fit for all agricultural purposes, <span>1805.</span>
" without any waste or broken land therein ; nor was the
" same then worth two dollars per acre : And the plaintiffs
" now say, that there is not, nor ever was, any bottom land
" in said several tracts ; but the same is wholly made up of
" rocks, and inaccessible mountains ; and the whole of said
" 32,162 acres of land never were of any value, and this,
" also, well known by the defendant, when he sold said lands
" to the plaintiffs as aforesaid, but of which the plaintiffs
" were wholly ignorant : And the plaintiffs further say,
" that said deeds, executed and acknowledged as aforesaid,
" conveyed to the plaintiffs no part of said tracts of land ; nor
" were the same executed or acknowledged according to
" the laws and usages of the Commonwealth of Virginia ;
" all which the defendant, at the time of executing, acknow-
" ledging, and delivering the same to the plaintiffs, well
" knew, but of which the plaintiffs were wholly ignorant :
" And the plaintiffs say, they have paid the whole of said
" sum of 8,040 dollars, and 50 cents, expecting and depend-
" ing upon it, that they should, by the deeds of conveyance
" aforesaid, receive a valuable property and consideration
" therefore ; yet they say, that they have received nothing ;
" whereby they, in consideration of the premises, are great-
" ly injured, defrauded, and have sustained damage," &c.

The defendant pleaded a special matter in defence. The plaintiffs replied, traversing a part of the plea ; and thereupon issue was joined. A verdict was returned for the plaintiffs. The defendant moved in arrest of judgment, alleging, that the declaration was insufficient, and the issue immaterial. This motion was over-ruled by the Court, and judgment rendered for the plaintiffs.

*Smith*, (of Woodbury,) and *Sherwood*, for the plaintiffs in error, contended, that although the plaintiffs below had sustained damage, yet that it was *damnum absque injuria*. To evince this, it was argued, that the assertions of the defendant amounted to no more than the expression of an opinion

SHERWOOD<br>v.<br>SALMON.

1805.

SHERWOOD
*v.*
SALMON.

regarding the quality and situation of lands, and particularly, that the representations related solely to the visible condition of a subject, open to the purchaser's inspection. It was insisted, that the defects complained of must, from the *nature* of the subject, be *visible* defects, and discoverable by the exercise of due care ; and that the rule of *caveat emptor* relative to visible defects was without exception, if the purchaser had eyes to see, and the subject misrepresented did not require peculiar skill to discern its real condition. The following authorities were cited : *'Esp. Dig.* 629, *Dub. edit. Risney* v. *Selby,* (*a*) *Roswell* v. *Vaughan,* (*b*) *Baly* v. *Merret* (*c*) *Pasley* v. *Freeman* (*d*) and 3 *Bla. Com.* 165.

*Edwards,* (of Hew-Haven,) and *Daggett,* for the defendant in error.

It is agreed, that the allegations in the declaration are full and explicit ; that the defendant falsely and fraudulently misrepresented the quality of the land ;—that his assertions were untrue, and known by him to be so, and made with an intent to injure and defraud the plaintiffs ; and that the object of the purchase is totally defeated. It also appears, that these lands are situated in the commonwealth of Virginia.

Upon this statement of facts, the objection is a broad one ;—it must be supported by the following principle, *that in the sale of land, no fraud can be committed, by false affirmations, as to the* QUALITY, *which shall subject the defendant to damages.* This principle must be maintained, or this declaration must be adjudged sufficient.

To support this principle, the English authorities are resorted to ;—and the case of *Roswell* v. *Vaughan* is cited.

(*a*) 1 *Salk.* 211. S. C. by the name of *Lysney* v. *Selby,* 2 *Ld. Raym.* 1118.
(*b*) *Cro. Jac.* 196.          (*c*) *Cro. Jac.* 386.
(*d*) 3 *Term Rep.* 51.

That case has nothing to do with the point. The only question discussed, or stirred, was as to *title ;* and in *Risney* v. *Selby*, it is laid down to be law, that " when a thing " is of certain value, and that known to the seller, but can- " not be known to the buyer, for any deceit in affirming the " value to be different from what it is, an action for the " deceit lies."—In that case, a landlord wishing to dispose of his interest in a house, affirmed the rent to be more than it really was, whereby the purchaser was induced to give more than it was worth ; and for that fraud the action was maintained. This case is constantly cited by elementary writers and judges as good law. To be sure, the maxim *caveat emptor* is to be regarded ; and we agree, that where the quality of the article can be ascertained with *ordinary diligence*, the buyer shall stand by the loss ; but to say, that in all events, he is to inform himself, is to place an honest man, in many instances, in the power of a swindler. It is often said in our books, that courts should, as far as possible, enforce the duties of morality. The principle advanced seems to be rather a protection to fraud.

It is not surprising, that in Great-Britain cases of this nature should seldom occur. Lands there are, and have been for centuries, settled, and their value ascertained. Rent is the standard, and the only standard of value. Far different is the case here. Lands are offered in market, and sold by the description given of them ; and from the nature of the case, this is the only evidence which the buyer, generally speaking, can have. On this he relies ; and, if truth were to guide in these descriptions, he might rely with safety. This has been practised in all parts of our country for years. Shall not then the rules which govern in other cases of sales, where the article cannot be examined by personal view, be applied to these sales ?

A. offers for sale to B. a pair of horses, a ship, or an estate situate in Boston. He affirms, that they are in the same plight as when B. saw them three months before. B.

purchases upon that affirmation.—It afterwards appears, that the pair of horses had become disordered, the ship damaged by violence of weather, and the estate rendered worthless by an earthquake. Shall the purchaser be remediless ? It may be said, that he ought to have examined when he purchased. *Caveat emptor*, and a host of other maxims may be offered to him for the loss of his money ; but they seem *too poor* a retribution, especially when coming from the man who has deliberately practised the villanous fraud.

We contend further, that our own courts have established these actions by so many decisions, that the question ought to be considered at rest. For more than ten years, this point has been settled in our Superior Court ; and the decisions since have been as numerous almost as the sessions of the courts. The same point has also been repeatedly decided in the Supreme Court of Errors. *Norton* v. *Hatheway*, in 1800 ; (e) *Bostwick* v. *Walker Lewis*, in 1802 ; (f) *Bostwick* v. *Edmund Lewis*, in 1804 ; (g) are all cases, in which this doctrine was recognized, and established.—A distinction is, indeed, set up between this case and the cases cited. It is this—in those actions *decoys* were made use of, or in other words, certain persons, who *appeared* to the plaintiffs, to be *purchasers* with them, were indeed sellers, *for a reward.* This, however, was not the fact in *Norton* v. *Hatheway.* But where is the law to warrant this distinction ? It is not said in any action on this subject, that the *extent* of the fraud shall vary the *nature* of the action. The only proper question is, can a *fraud* be perpetrated in the sale of land, for which an action lies ? Whether this or that artifice or practice shall subject the defendant to damages, is always a question on the trial of the issue. To maintain the position laid down in this case, the principle must be assumed, that a *sale of land* is not

(e) *Ante, vol. I. p.* 255, *in notes.*
(f) *Ib. p.* 33.
(g) *Ib. p.* 250.

the *subject* of an *actionable fraud* regarding the quality, be the artifice or deception what it may.

A. buys a horse of B. who affirms, to induce the sale, that he is every way sound, and without defect. The horse has but one eye :—No action lies, for *caveat emptor*. But B. instead of making this affirmation himself, hires C. and D. to make the same affirmation. Will this circumstance create a right of action?

A. buys of B. 25,000 acres, part of a tract of 50,000 acres of land lying in Virginia.—C. at the procurement of B. is a *pretended* purchaser of the other 25,000 acres ; and to effectually cheat A. joins with B. in all his false asseverations as to quality.—A. can, upon the principles of the cases of *Bostwick* and *Lewis*, decided in this Court, recover from B. and C. all his damages for this fraud, because, say the counsel for the plaintiffs in error, you shall not " throw dust " in a man's eyes, and then say that he might have seen." But if, in the case put, the same falsehoods are uttered without the agency of C. and the same injury insues, there is no remedy. It would seem, that if the plaintiffs' eyes are blinded, it is immaterial whether the dust comes from B.'s hands, or from C.'s through B.'s procurement.—In neither case can there be a recovery, unless the lands are different from the representation ; for fraud without injury is no foundation for damages. If there be this injury, in neither case should the defendant retain the money, and laugh at the victim of his iniquity.

There is, then, no authority for this distinction ;—the point has been repeatedly decided in this Honourable Court ; and their decisions should not be shaken.

By THE COURT unanimously, the judgment was reversed.

The questions are, was the declaration sufficient, and the issue material ?

. With respect to the first.—The maxim *caveat emptor* applies forcibly in this case. The law redresses those only who use due diligence to protect themselves :—*Such* diligence as prudent men ordinarily use.—The quality of land, on which its value depends, and which is too various for a market standard, the purchaser can see, if he will but look. And the course that prudence has established, requires that he should look ; if not with his own eyes, by those of an agent, or some one in whom he can reasonably place a confidence. Whatever morality may require, it is too much for commerce to require, that the vendor should see for the purchaser. It is enough for him, in point of law, that he does not conceal the knowledge of secret defects, nor give a warranty, express or implied. Here he has done neither.

Whether lands be five, or five hundred miles from the purchaser's residence, does not vary the requisition of due diligence, though it may the expense of complying with it. Land is not like a ship at sea ; it has a known location, and can be approached. And even should it be necessary to purchase land unseen, which can scarcely happen in a provident course of business, covenants may be inserted respecting quality, as well as seisin, or title.

As there must be a reversal upon this point, which makes an end of the case, it is not necessary to unravel lengthy and intricate pleadings to get at the other.