JUNE TERM, 1842.    **21**

Cullum v. The Branch of the Bank of the State of Alabama at Mobile.

# CULLUM v. THE BRANCH OF THE BANK OF THE STATE OF ALABAMA AT MOBILE.

1. The right of a purchaser of land to have a good title, is a right not growing out of the agreement of the parties, but which is given by law.

2. This right exists until the contract of the parties is determined by its execution on the part of the vendor, and when the conveyance has been executed by all the necessary parties, then the rule of *caveat emptor* applies with its utmost rigor. If the purchaser is afterwards evicted by a title to which his covenants do not extend, he is without relief, either at law or in equity.

3. When a purchaser is evicted by a title covered by his covenants of warranty, this eviction cannot be called a failure of consideration, nor is it available as a defence *at law*, to an action for the price of the land. And the reason is, that a court of law cannot do complete justice between the parties, by placing them in *statu quo*.

4. Where the contract of sale has been executed by the purchaser's acceptance of a conveyance, fraud cannot be urged as a defence to an action *at law*, for the price agreed to be paid.

5. When a purchaser with warranty is evicted by a title to which his covenants extend, and the vendor is insolvent, equity will restrain him from recovering the purchase money to the extent for which he is liable to the purchaser on his covenants of warranty.

6. Fraud committed by the vendor in the sale of land by the concealment of an incumbrance, created by himself, by means of which the purchaser is afterwards evicted, is relievable in equity by restraining the collection of the purchase money to the extent of the injury, or by an entire rescission of the contract, although the incumbrance is of record and the conveyance is with warranty, covering incumbrances generally.

7. In all cases of purchase there is a trust and confidence reposed by the purchaser in the vendor, that the estate is not impaired in value or incumbered by any act done by him ; and by offering to sell, he virtually represents it as not incumbered by himself, or, if it is, that he will free it before the sale is executed.

8. There are cases in which the mere concealment of an incumbrance, has been held no ground to rescind the contract, when the incumbrance is removed before the hearing, but these cases rest upon the principle that no injury has resulted to the purchaser.

9. It seems that when the occupation has been of any value to the purchaser, the vendor, upon the rescission of the contract, will be entitled to interest on the purchase money, as a remuneration for the occupation, from the time of the purchase until the offer to rescind, and until the abandonment.

10. The purchaser has the right, when an incumbrance has been concealed from him, to require a prompt removal of it ; and if this is not effected he is entitled to seek a rescission of the contract, and may abandon the possession, unless he chooses to retain it as a trust fund to reimburse himself for money paid. And

the effect of retaining the possession until a decree for rescission, will be only to charge the purchaser with interest on the purchase money, if the possession is of any value.

11. The fact that a covenant covering the eviction was entered into by the vendor, will not prevent the purchaser from insisting on the fraud, in order to rescind the contract.

12. The circumstance that the incumbrance could have been removed by the payment of a sum greatly less than that remaining due for the purchase money, is no answer to the claim for rescission, on the ground of fraud, as it is the vendor's duty even in the case of warranty to protect the possession of the purchaser at all hazards, or to suffer the consequences.

13. When the holder of negotiable paper to which there exists an equitable defence, has given no consideration for its transfer, but it is held merely as a collateral security, to secure a debt due from the payee of the paper, it is open to the same defence as if it was held and owned by the payee. *Quere*, as to how the case would be if the note was not held merely as collateral security, and a new consideration was given either by the discharge of other paper or of other parties.

14. When the record shows good and bad pleas, upon all of which issues are joined to the country, and evidence is offered which supports the bad pleas only, it is no error for the Court to refuse to instruct the jury that the defendant is entitled to a verdict. The proper course in such a case is for the defendant to request the court to charge that a verdict ought to be returned for him on the plea proved.

WRIT of Error to the County Court of Mobile County.

Action of assumpsit on a promissory note for eleven thousand eight hundred dollars, dated October 17, 1836, and payable three years after date to S. Andrews, or order, negotiable and payable at the Bank of Mobile, signed by the defendant and endorsed to the plaintiffs by S. Andrews.

The defendant pleaded—

1. Non assumpsit.

2. *Actio non*, &c., because the defendant saith that the note in the plaintiff's declaration mentioned was obtained from the said defendant, by the said S. Andrews, by fraud, covin and misrepresentation, in this, to wit: That the same, on the day of the date thereof, was made, executed and delivered by him, the said defendant, to the said S. Andrews, for and in consideration of the sale made by the said S. Andrews, on that day, of a certain lot of land in the city of Mobile, and as a part of the purchase money agreed to be given for the same, and for no other consideration whatsoever. And the said defendant further saith, that upon the sale of the said lot, the said Andrews

did, then and there, falsely and fraudulently represent to him, the said defendant, that the title to the said lot, in him, the said Andrews, was full and complete, and that he had full right to sell and convey the same, and that the same was free and discharged from all lawful incumbrances whatsoever, and in particular from all incumbrances done or suffered by him, the said Andrews. And he, the said defendant, in fact saith, that in confidence of the false and fraudulent representations, and believing and supposing the said lot to be free from all lawful incumbrances, he did agree to purchase the same, and not otherwise, and thereupon executed the said note. And the said defendant in fact saith that at the time of the said sale, the said lot stood lawfully incumbered and bound by the force and effect of a certain deed of mortgage, before that time executed and delivered by the said Andrews, to, and for the benefit of, one Philip McLoskey, whereby the said Andrews had conveyed said lot to said McLoskey, subject to the payment of the sum of seventeen thousand one hundred dollars, due by the said Andrews to the said McLoskey, and then and still unpaid. And the said defendant further saith, that so soon after he received notice, or acquired knowledge of the existence of the said incumbrance, and within a short and reasonable time after said sale, to wit, on the —— day of ——, in the county aforesaid, and before the assignment of the said note, he, the said defendant, gave notice to him, the said Andrews, that he repudiated the said contract of purchase, and demanded of him the return of said notes,—and offered to do all things necessary, and cancel the same on his part, as he lawfully might, for the fraud aforesaid. And the said defendant further saith, that he, the said defendant, hath never received, taken, or held the possession of the said lot so sold as aforesaid, nor received any of the rents or profits thereof, nor derived any profit, benefit, emolument or advantage therefrom; of all which facts and circumstances, the said plaintiffs, at the time of the assignment of said note to them the said plaintiffs, had full notice. And the said defendant further avers, that by reason of the nonpayment of the said mortgaged debt, the said lot and the title thereto, sold by the said Andrews to him, this defendant, hath been wholly lost to him, the defendant, and hath become the lawful property of other persons: wherefore, the said defen-

dant saith the said note is void in law, and this he is ready to verify, &c.

3. *Actio non*, because the said defendant saith that the said note, in the plaintiffs' declaration mentioned, was executed and delivered at the time of the date thereof, by him the said defendant, and obtained from him by the said S. Andrews, without any lawful consideration whatsoever had and received by him the said defendant, from the said Andrews, for the making thereof; and of which total want of consideration, the said plaintiff at the time of the assignment thereof, had full and ample notice: wherefore, the said defendant saith the said note is void in law; and this he is ready to verify, &c.

4. *Actio non*, because the said defendant saith, that the said note in the declaration specified, was given to the said Andrews, at the time of the date thereof, in part payment of the purchase money agreed to be paid by the defendant to the said Andrews, for a certain lot of land, in the city of Mobile, then sold by the said Andrews to the said defendant. And the said defendant avers, and in fact saith, that upon the sale of the said lot, he, the said defendant, did require that the said Andrews should warrant the title to the said lot against all lawful incumbrances, and against the lawful claims of all persons whatsoever, and thereupon the said Andrews, by his deed of conveyance, of even date with the said note, sealed with his seal, in consideration of the price agreed to be paid for said lot as purchase money, did covenant that he would warrant and defend the said premises, so sold by him to the said defendant, against all and every person lawfully claiming or to claim the same; and the said defendant avers that after making the warranty aforesaid, the said Andrews broke his said covenant of warranty, and failed to keep and perform the same, in this, that inasmuch as the said Andrews before that time executed a certain mortgage to one Philip McLoskey, whereby he had conveyed the said premises to said McLoskey to secure the payment of seventeen thousand one hundred dollars, and inasmuch as the said sum became due and was wholly unpaid by the said Andrews, the said premises were, by due process of law, made subject to the said incumbrance—and the whole title thereto was by the said defendant lost, by reason of the making of the said incumbrance, and which was title paramount to

that conveyed by said Andrews to him, this defendant. Wherefore the said defendant saith that the said warranty hath been broken, of all which the said plaintiff had full notice at the time of the assignment of said note by the said Andrews, to the said plaintiff. Wherefore the said defendant saith that inasmuch as said premises have been, by reason of said incumbrance, wholly lost to the said defendant, he the said defendant saith that the said note is void in law, and this he is ready to verify, &c.

Issues were joined on all these pleas, and the cause submitted to a jury, which returned a verdict in favor of the plaintiff for the amount of the note and interest, on which judgment was rendered.

A bill of exceptions was sealed at the trial which discloses that the plaintiff gave in evidence the note described in the declaration; and on behalf of the defendant it was shown that on the day of the date of the note, S. Andrews, the payee, sold to the defendant a lot of ground in Mobile, for the sum of thirty thousand dollars, and gave him therefor a deed of conveyance with warranty of title against the lawful claims of all persons whatsoever, reciting the consideration of thirty thousand dollars, which deed was produced at the trial; and for the payment defendant gave to Andrews his note for ten thousand six hundred dollars, due one year after date, his note for eleven thousand two hundred dollars, due two years after date, and, also, the note now sued on. These notes being for the purchase money and interest.

It further appeared in evidence, that a short time after this purchase, the defendant discovered that Andrews had, on the 22d February, 1836, executed a mortgage of the said lot to Philip McLoskey, to secure to him the payment of seventeen thousand dollars, due by these notes, made by Andrews and payable to McLoskey, one for five thousand three hundred and fifty dollars, due one year after date, one for five thousand seven hundred dollars, due two years after date, and the other for six thousand and fifty dollars, due three years after date, and all of them of the same date as the mortgage. The mortgage was duly recorded some months before the sale to the defendant, but it did not appear that he knew of it at the time of his purchase.

. The defendant also offered evidence conducing to prove that Andrews had concealed the existence of the mortgage, and that he did not disclose its existence to the defendant when he purchased the lot, and that when the defendant discovered it he charged the said Andrews with the deception, and offered to cancel the deed and notes. It further appeared in evidence that Andrews failed in the spring of 1837, and absconded insolvent, and has ever since continued absent and insolvent— that before leaving the State he transferred the three notes given to him by the defendant. The note sued on was transferred by Andrews to Fontaine and Freeman as collateral security, to secure them against pre-existing liabilities for Andrews, and was by them transferred to the plaintiff as collateral security for pre-existing debts due by Andrews to the Bank.

It further appeared that the lot sold was a vacant lot, that the defendant never took possession of it, and refused to intermeddle with it in any way, that he never received any benefit from the said property. that McLoskey took the control of it, enclosed it, paid the taxes and made the pavement in front of it.

It further appeared that the first note made by Andrews to McLoskey was paid at maturity, but the other two notes, with the mortgage made by Andrews, were assigned by McLoskey to the Planters and Merchants Bank of Mobile, that those two notes were protested, and never paid, that the said Bank filed a bill in Chancery against Andrews and the defendant, to foreclose the mortgage, and that a decree of foreclosure and sale was rendered, under which the lot was sold, but not for enough to satisfy the amount remaining due by Andrews on his mortgage, and that the lot was purchased by the said Bank, which now holds it under this purchase.

The defendant produced the other two notes given by him to Andrews, which had been taken up by him.

On this evidence the defendant requested the Court to charge the jury that if they believed the facts before stated to be proved to their satisfaction, then that the consideration for the note sued on had entirely failed; and that if the note had been transferred by Andrews to the Bank as collateral security merely, and for pre-existing liabilities, and if the defendant had repudiated the contract so soon as he discovered the incum-

brances, and had received no benefit whatever under it, but that the title had passed to the purchaser under the mortgage, then the plaintiffs were not entitled to recover.

This charge the Court refused to give, and instructed the jury that the Court could see no reason why Andrews himself might not recover on the note then before the jury. That the recording of the mortgage was notice to the whole world of its existence, and in law the defendant was bound to know the fact, and having relied on his warranty, he had a right to pursue Andrews on that warranty. With a knowledge then of the existence of the mortgage when the defendant purchased the land, he was bound to rely on his warranty. Or the jury might suppose that the price at which defendant purchased would authorize him to satisfy the mortgage and complete his title.

To all this the defendant excepted—and he now prosecutes his writ of error to reverse the judgment rendered on the verdict of the jury, assigning as error the matters shown in the bill of exceptions.

STEWART, for the plaintiff in error, insisted that the judgment ought to be reversed, whatever may be the law arising on the facts, because the second and fourth pleas were fully proved by the evidence before the jury. If, however, the law of the case was to be examined, independent of these pleas he submitted the following points:

1. The Bank holding the note as collateral security, holds it subject to all defences which could be made against it if it was sued by the payee. [10 Wend. 85; Coddington v. Bay, 20 John. 637; 13 Wend. 605.]

2. The sale by Andrews was fraudulent under the circumstances shown in evidence. [Sugden on Vend. 6; ib. 491; 1 Story's Com. on Eq. §208, 142; 2 Kent's Com. 378.]

3. The defence can properly be made at law. [14 Pick. 293; ib. 217; Morehead v. Gayle, 2 S. and Porter 224; Wiley v. White, 3 ib. 355; Wade v. Kellough, ib. 431; Wilson v. Jordan, ib. 92; Pitts v. Cottingham, 9 Porter, 675; Frisby v. Hoffnagle, 11 John. 50; Sill v. Read, 15 John. 230; McAllister v. Read, 4 Wend. 483.]

4. The questions now raised are not within the influence of

any of our decisions, that possession passing to the vendee will prevent a defence at law. [Wilson v. Jordan, 3 S. and P. 92; Christian v. Scott, 1 Stew. 490; S. C. Minor, 351 ; Gilchrist v. Dandridge, Minor, 165; Stone v. Gover, 1 Ala. Rep. 287; Bliss v. Smith, ib. 273; Dunn v. White, ib. 645; Young v. Harris, 2 Ala. Rep. 108; Camp v. Camp, 2 ib. 632; Callaway v. McElroy, 3 ib. 406.]

CAMPBELL, contra.

GOLDTHWAITE, J.—The facts of this case shown by the bill of exceptions, are supposed to present two prominent grounds of defence ; the first arising out of the alledged fraud, and the other because of an entire failure of the consideration for which the note sued on was given.

Our first examination will be of the question respecting the failure of the consideration.

1. Most generally the inducement of a purchaser in treating for the acquisition of land, is to become *its owner*.    We do not mean to assert that one person may not legally contract with another, who has merely the possession of the land, although *his title* to it may be known to be imperfect, or even bad, but our intention is to show what are the *prima facie* intendments springing out of contracts for the purchase of land, when there are no stipulations between the parties with reference to the title.

In Ogilvie v. Foljambe, [3 Mere. 53,] Sir William Grant says, "the right to a good title, is a right not growing out of the agreement of the parties, but which is given by law. The purchaser insists on having a good title, not because it is stipulated for by the agreement, but on the general right of a purchaser to require it."

Courts of equity govern their proceedings by this just rule, and when an incumbrance is discovered previously to the execution of the conveyance, the vendor must discharge it, whether he has or has not agreed to covenant against incumbrances, before he can compel the payment of the purchase money. [Sugd. on Vend. Chap. 9, § VI. 315, and cases there cited.]

A similar rule obtains in the courts of law, where all titles, as between the vendor and purchaser, are declared either good

Cullum v. The Branch of the Bank of the State of Alabama at Mobile.

or bad, according as their merits may be, for there is no middle term to designate a defective title; [Romelly v. James, 6 Taunt. 263;] and every title to be marketable must be good in equity as well as at law.   [Maberly v. Robbins, 5 Taunt. 625.]

2. Such are the rights of a purchaser when he has made no stipulations with respect to the title ; but there is a period when the contract of · the parties is determined by its execution on the part of the vendor, and then the rule of *caveat emptor* applies with its utmost rigor.   This period is when the conveyance has been executed by all the necessary parties, and accepted by the purchaser; after this, if the purchaser is evicted by a title to which his covenants do not extend, he cannot recover the purchase money, either at law or in equity. [Sugd. on Vend. Chap. 9, §VI. 346, and cases there cited.] His neglect to look into the title is then considered his own folly, for which he has no relief, [ib. 347,] and this rule applies equally whether the money has been paid or is only secured to be paid.   [Ib. 349; Thomas v. Powell. 2 Cox, 394.]

The true rule with respect to the liability of the vendor, and the obligation of vigilance imposed on the purchaser, is most appropriately stated by Mr. Fonblanque, who says, " the principles upon which courts of law proceed upon the subject of warranty, so strongly tend to reconcile the claims of convenience with the duties of good faith, that I cannot conceive the mean by which they can receive an additional extent, or be in any degree circumscribed, without endangering the interests which they are now so well calculated to preserve.   To excite that diligence which is necessary to guard against imposition, and to secure that good faith which is necessary to justify a certain degree of confidence, is necessary to the intercourse of society.   These objects are attained by those rules of law which require the purchaser to apply his attention to those particulars which may be supposed within the reach of his observation and judgment; and the vendor to communicate those particulars and defects which cannot be supposed to be immediately within the reach of such attention.   If the purchaser be wanting of attention to those points where attention would have been sufficient to protect him from surprise or imposition the maxim *caveat emptor* ought to apply; but even against

this maxim he may provide, by requiring the vendor express-
ly to warrant that which the law would not imply to be war-
ranted.   If the vendor be wanting of good faith, *fides servan-
da* is the rule of law, and can scarcely be more effectually en-
forced in equity than it is at law."   [1 Fonb. Treat. on Equity,
362, note h.]

3. We do not understand the counsel for the plaintiff in er-
ror as disputing the principles just adverted to, but rather as in-
sisting, that, there being in this case an express warranty cov-
ering the eviction, under which Andrews would be liable to
the extent of the sum agreed to be paid him by the defendant,
that therefore a recovery ought not to be permitted in favor of
his assignee; and the more especially that it ought not to be al-
lowed when Andrews is shewn to be insolvent, and thus una-
ble to respond in damages.

Such a defence, whatever may be its merits, cannot be cal-
led a failure of the consideration for which the notes were given,
because, if there was no warranty whatever, the defendant
would be without relief.   It follows, that if he is now entitled
to a remedy, it must be in consequence of the warranty and
the subsequent insolvency of the warrantor, by which the
covenant intended for the purchaser's security has become un-
available.

Without now stopping to inquire whether these circumstan-
ces afford a reason for equitable interposition and relief, we
think it clear that they do not make out a *legal* defence, even
in a case where the recovery on the covenant of warranty
ought to be equal, or larger, than the sum sued for.   The rea-
sons which induce this conclusion are these: In the first place,
the damages to be recovered on a covenant of warranty are,
in their nature, unliquidated, and therefore are not the subject
of a set off, according to our judgment in the case of Dunn v.
White and McCurdy, [1 Ala. Rep. N. S. 645.]   Secondly, the
covenant of warranty would not be extinguished by this de-
fence.   Thirdly, the covenant itself operates as an estoppel to
the grantor, and would have the effect to transfer to the pur-
chaser or his assigns, any subsequently acquired title, which
should be vested in the grantor.   Fourthly, by the conveyance
all covenants running with the land are, *ipso facto*, assigned
to the purchaser.

This last reason, it is apparent, does not apply to this case, because the breach of covenant is a consequence of the vendor's own act, but it must so frequently apply to cases that it is decisive against the adoption of a practice which would be more like an exception than a general rule.

But independent of these reasons, the facts of this case, (excluding for the present all consideration of the matter of fraud,) bring it within the influence of the decision made by us in Dunn v. White and McCurdy, [1 Ala. Rep. N. S. 645,] in which we held that a partial failure of consideration was not an available defence to an action for the purchase money of lands of which the purchaser retained the possession. It appears here that the defendant purchased the lot in October, 1836. The conveyance then made transferred the possession to him as absolutely, in point of law, as if he had been invested by *livery of seisin*. [Bliss v. Smith, 1 Ala. Rep. N. S. 273.] This effect is produced by the operation of our statute, similar to the English statute of uses on the conveyance. [Aik. Dig. 94, §37.] Under this conveyance the purchaser was entitled to retain the possession until the forfeiture of the condition of the mortgage, executed previously, by Andrews to McLoskey. This forfeiture did not take place until February, 1838, when the second note secured by it was dishonored, consequently, during the interval between these periods, the defendant is entitled to the *usufruct*, and can be made responsible to no one for rents or profits in any form of action. [4 Kent's Com. 157; Stanard v. Eldridge, 16 John. 254.] If the defendant was seeking a recovery against Andrews by an action on the covenant of warranty, the measure of damages would be the price agreed to be paid, or actually paid, with interest thereon, from the time at which the defendant would legally be responsible to another for *mesne* profits, together with the cost of the ejectment suit. [Bennet v. Jenkins, 13 John. 50; Caulklin v. Harris, 9 John. 324; Pitcher v. Livingston, 4 John. 1; Slaats v. Teneyke, 3 Caines, 111; Baldwin v. Munn, 2 Wend. 399; Wagers v. Schuyler, 1 Wend. 553.]

We have not considered it important to ascertain the exact period when the lot was abandoned to McLoskey, if indeed it was so abandoned, or whether the defendant was authorized to abandon to one claiming title, without suit, for the reason,

32                              ALABAMA.

Cullum v. The Branch of the Bank of the State of Alabama at Mobile.

(whatever may be the rights of parties with reference to this matter,) that we consider the sale and possession, under the decree of foreclosure, as equivalent to a legal eviction, it being a part of the case that the defendant was a party to that suit. Nor is the circumstance that the defendant has paid the other two notes, if such is the proper inference to be drawn from the fact that he has them in possession, of sufficient importance to introduce a modification of the principles just ascertained.

The true question, so far as a court of law is concerned being whether the defence asserted can be sustained without overstepping the boundary which divides the jurisdiction of law and equity, and not as to the amount to be recovered.

From what has been previously shown, it will be seen that all the consequences flowing from the conveyance and warranty will be the same, whether the defence is successful in whole or only in part. It is because a court of law cannot do complete justice between the parties by placing them in *statu quo*, that this defence, under this aspect, is properly referable to equity jurisdiction.

4. The question of fraud is not entirely novel in this court, although it never has been presented in the same imposing manner.

In Christian v. Scott, [Minor 354, S. C. again before the Court, 1 Stewart, 490,] one of the defences insisted on was, that the bond, the foundation of the action, was given in payment for land, to which the vendor represented he had a fair title, and that it was clear of all incumbrances. It was shown that the land was incumbered with a deed of trust, executed by the vendor to secure the payment of a sum of money due from him, and there was no evidence that the purchaser was informed or otherwise knew of it. The purchaser had taken possession of the land, and received a conveyance of it from the vendor. One of the charges requested was, that although the vendor had made fraudulent representations as to his title, yet if the purchaser received the possession, and carried the contract into execution by taking upon himself the ownership of the land, payment of the bond could not be resisted. This Court reversed the judgment of the Circuit Court for refusing to give this charge.

By this recital it will be seen that the case was similar in all

respects to this, except that here the additional fact of eviction by reason of the incumbrance is presented.

Some expressions are used by the learned Judge who delivered the opinion in the subsequent case of Wilson v. Jordan, [3 S. and P. 92,] from which it may be inferred that a change of opinion as to the defence had obtained in the court at that time; but when that case is examined we find the question of fraud was not involved, either in the pleadings or proofs of the cause. Indeed all inference of fraud is rebutted by the statement that it was not relied on as a defence. Independent of this, it can scarcely be supposed that the case of Christian v. Scott, which had been twice before the court, would be overruled without any reference to it. The course of decision ever since has been adverse to any investigation of the title or of any defect in the estate, when the possession is retained by the purchaser, and the contract is not rescinded. [Wade v. Killough, 3 S. and P. 431.]

Even in contracts for the acquisition of personal property, fraud has never been admitted as a complete bar to a suit for the purchase money, unless the defendant has returned, or whenever practicable, offered to return, the purchased chattel. [Cozins v. Whitaker, 3 S. and P. 322; Barnes v. Bailey and Du Bard, 2 Ala. Rep. 749, and cases there cited.]

There are many distinctions between the rules which affect real and personal estates, which are distinctive features of the common law, and their ramifications extend so far that no one can clearly foresee the consequences of overturning them. Among these not the least important are the different modes of succession after the death of the last possessor, and the different effect of covenants respecting each species of estate.

If the defence of fraud was permitted in this case, to avoid a recovery at law, there is nothing in the record to show that the contract has ever been rescinded, and therefore Andrews hereafter might be liable to an action on his warranty; or in the case of a title subsequently acquired by him, be estopped by his covenant from asserting it. Many other difficulties may be supposed which do not indeed apply to this particular case, as it is presented on the record, but which are conclusive against the admission of this defence as a general rule. Take for instance, the case of an eviction after the receipt of large

rents, or profits, for which the purchaser is not responsible to the evictor; are these to remain unaccounted for, or must not the defence be denied under the influence of our previous judgment in Dunn v. White and McCurdy?

Again, a case may be stated which seems to furnish an absolute test of the unsoundness of this defence at law. In the event of the death of the purchaser before eviction, and previous to payment of the purchase money, the estate would descend to the heir, whilst the personal representative would · be answerable for the debt. Which is entitled, the personal representative to defeat the action against him on the notes, or the heir to his action on the covenant of warranty?

5. This examination of principles and authorities leads us to the conclusion that the defendant has no available defence at law: but it is asked, whether it can be supposed that he is remediless, in a case where injury is so apparent? We answer that no such consequence flows from the assertion of these rules.

Assuming that the warranty was entered into in the most perfect good faith, we think relief must be given in Chancery, on the ground of Andrews' insolvency, if the present holders of this note are not to be considered as its *bona fide* holders, a matter which we shall hereafter advert to.

When the defendant accepted of the covenant of warranty, it was doubtless considered as an effective security, and if he had been evicted before the payment of the purchase money, our impressions tend strongly to the propriety of not permitting Andrews himself, if insolvent, to receive that portion of the purchase money which he would be compelled to refund in an action on the warranty, though we are aware of decisions to the contrary; but however this may be, his insolvency furnishes a ground of equitable relief entirely within the influence of the case of Farr and Beck v. Reynolds, [3 Al. Rep. 521.] It is useless to pursue an insolvent indorsement but it is quite too injurious to be allowed to pay him money which he will never refund.

6. As to the defendant's relief in equity, upon the allegation of fraud, we think also there is no question, provided it is sufficiently made out by proof. Mr. Sugden says, in his Treatise on Vendors, [Chap. 7, §III. 309,] that when a vendor gives a

false description of the estate, the purchaser may at law rescind the contract; but this must be understood to mean only those cases where the *contract is executory.* To this extent and no further do the cases cited by him support his text. [Duke of Norfolk v. Westly,.1 Camp. 337; Fenton v. Brown, 14 Vesey, 144; Blank v. Christer, 1 Salk. 128; see also Sherwood v. Sammon, 2 Day, 128; S. C. in Equity, 5 Day, 439; Cottingham v. Pitts, 9 Porter, 675.]

That this is Mr. Sugden's own view of the jurisdiction is apparent when he subsequently says, [in Chap. 9, §VI, 564,] "although the purchase money has been paid, and the conveyance is executed by all the parties, yet if the defect (of title) does not appear on the face of the title deeds, and the vendor was aware of the defect, and concealed it from the purchaser, or suppressed the instrument by which the incumbrance was created, or on the face of which it appeared, he is in every such case guilty of a fraud, and the purchaser may either bring an action on the case or file his bill in equity for relief." [See also Brice v. Holback, Doug. 654; Early v. Garrett, 9 B. and C. 522.]

But the bill in Chancery in most cases will be found to be a better remedy; it will lead to a better discovery of the concealment and the circumstances attending it, and may in some cases enable the court to create a trust in favor of the injured purchaser. [3 Coke Litt. H. and Butler, note 384, a.]

It is urged, however, that there is here no evidence of fraud, and that the purchaser either knew or is chargeable with notice of the incumbrance, because it was not only registered, but was in fact disclosed when the title was known to come to Andrews from McLoskey, who would have retained an equitable mortgage so long as the purchase money was unpaid to him. It cannot be denied that the defendant was in error, in not making an examination of the register, and also in not ascertaining from the previous vendor, whether he pretended to any lien; but this does not exculpate the vendor.

7. In all cases of purchase there is a trust and confidence reposed by the purchaser in the vendor, that the estate is not impaired in value, or incumbered by any act done by him. Indeed, by offering to sell an estate, the vendor virtually represents it as not incumbered by himself, or, if incumbered he,

will free it before the sale is executed ; and if he wishes to discharge himself from the consequences of this implied representation, it lies with him to show that the purchaser was informed or otherwise knew of the incumbrance.

In the case of Harding v. Nelthorpe, [Nelson, 118,] an issue was directed to ascertain whether the vendor knew of an incumbrance charged on the purchased land, but this course of proceeding in that case, shows that the incumbrance must have been created by some other person than the vendor. The case of Cater v. Pembroke, [1 Bro. Ch. C. 301, S. C. on appeal ; 2 ib. 281,] also bears on this point, and we infer from it the English Courts of Chancery recognize the rule we have just laid down.

8. There are cases in which the mere concealment of an incumbrance, created by the grantor, may not be sufficient cause to rescind a contract, although such a concealment certainly is a breach of the good faith which ought to be observed in all contracts ; but these cases rest on the principle that no injury has been sustained by means of the incumbrance.

Of this class is Hunt v. McConnell, [1 Monroe, 219,] which decided that the omission of the vendor to disclose the fact of an incumbrance created by himself when he is not actuated by a fraudulent intention, and when the purchaser sustains no injury from it, is not a sufficient ground to rescind the contract, provided the incumbrance is removed before the hearing. But it is said the matter would assume a more imposing aspect if the incumbrance had proved injurious to the purchaser. The same doctrine was recognized in the subsequent case of Campbell v. Whittingham, [5 J. J. Marshall, 96.] These cases, resting on the principle we have adverted to, have no tendency to restrict the rule declared in the leading case of Pasley v. Freeman, [3 Term 51,] where it said that the *concurrence* of fraud and injury is necessary to sustain an action on the case for a deceit.

There is no question here as to the injury, because the lot has been taken from the defendant in consequence of the foreclosure and sale under the mortgage, therefore, if the fact of the existence of that incumbrance was unknown to him, he is entitled, in our opinion, to a rescission of the contract, whether

there was or was not any fraudulent intention on the part of the vendee to work this injury to the purchaser.

9. In the case of Edwards v. McLay, [Cooper 308, S. C. on Appeal; 2 Swanst. 287,] the purchaser was held entitled to recover the purchase money with interest, from the time when he quitted the *valuable occupation* of the land, together with what he had expended for repairs, &c. This seems to indicate that if the occupation has been of any value to the purchaser, then the vendor, upon the rescission, would be entitled to interest on the purchase money, as a remuneration for the occupation from the time of the purchase until the offer to rescind and until the abandonment. We regret that we have not had access to the report of the case of Small v. Atwood, [Young 408,] and the same case on appeal to the House of Lords, in which we understand all the English cases upon the rescission of contracts for the purchase of real estate, are examined, as it would probably shed much light on this somewhat obscure branch of the science, and especially upon the manner in which courts of equity mete out justice to both the purchaser and vendor.

10. Without the aid of precedent to guide us, we can arrive at no other conclusion than that the purchaser has the right, when an incumbrance has been concealed from him, to require a prompt removal of it, and if this is not effected, he is entitled to seek a rescission of the contract; and may abandon the possession, unless he chooses to retain it for the purpose of charging the land with a trust to reimburse himself for money paid; nor is it under any circumstances essentially necessary that he should abandon the occupation, as the only effect of retaining it until a decree of rescission, even in cases where the occupation is of any value, will be to charge him with the interest on the purchase money. That the land may be made chargeable with such a trust is recognized in Cater v. Pembroke, [1 Bro. Ch. C. 301; 3 Coke on Litt. H. and Butler's note 381 a.]

11. It has been argued that the purchaser has no relief in any forum for the fraud, inasmuch as he has taken a covenant from the vendor, which covers the precise injury sustained. We have examined the case of Leonard v. Pitney, [5 Wend. 30,] where it is put with a query whether an action on the

case will lie where the purchaser has accepted a deed without warranty; but independent of many cases in the books to the contrary, we consider the matter at rest in this Court, in consequence of the judgment given in Cozens v. Whitaker, [3 S. and P. 330.] That was case for a deceit in the sale of a personal chattel, where there also was a warranty, but we can perceive no satisfactory reasons for any distinction to be made in the sale of lands. The case of Cater v. Pembroke before cited, is satisfactory to show that a court of equity may relieve for a fraud in the sale of lands, although there is also a warranty.

12. It has also been strongly urged that this defence is but an attempt to procure relief from a hard bargain; that there is nothing to show that the defendant has paid the other notes given for the land, though he has them in his possession; and the incumbrance could and would have been discharged if the defendant in reality had paid any one of the notes: it is said furthermore, that the defendant himself could have paid off this incumbrance, and might have retained the sum paid out of that due to Andrews. All these matters may be as supposed, and yet the right of the defendant to relief is not impaired.

When the facts of this case are considered in the most favorable aspect for Andrews, he was bound at all hazards to prevent a breach of his covenant of warranty; and if he was sued for that breach, he would not be permitted to assert, or show, that the defendant might have avoided eviction, either by paying off the incumbrance, or by purchasing in an outstanding title. These were privileges which the defendant might exercise if he would, but his omission furnishes no excuse to the vendor.

On the other hand, it will be quite in time for the plaintiff to show that this defence is a mere pretence, and that the defendant acquiesced in the purchase after a knowledge of the fraud, and until circumstances had rendered it desirable to avoid the purchase. Equity requires diligence and promptness in urging a rescission on the ground of fraud, and frequently presumes a waiver, or leaves the party to his remedy at law. [Hardwick v. Forbes, 1 Bibb, 212; Robinson v. Galbraith, 4 Bibb, 183; Colyer v. Johnson, 2 Munroe, 16.]

13. The right of the defendant to urge this defence against

the present holder of the note arises out of the circumstances stated in the bill of exceptions, and these show that no new consideration was given by the bank when it acquired the property in the note, but that it was transferred to them as collateral security, to secure a precedent debt due from Andrews.

A decision on this point is not required, in consequence of the conclusions at which we have already come ; but it may be said that all the authorities concur in admitting this defence *under the circumstanses shown in evidence.*

How the law would be if it shall appear that the note is not held *merely* as collateral security, but that a new consideration was given by the discharge of other paper, or of other parties, by the acceptance of this note previous to its maturity, and without notice, are matters which we decline now to consider, and we only advert to them to show that these questions are not involved in this case as presented.

14. One other question remains to be considered. It is said the second and fourth pleas are supported by the evidence, and therefore it is insisted that the charge should have been given, whatever may be our opinion upon the abstract merits of these pleas. From what has been said it will be seen the second plea is not in fact sustained, because it asserts that the defendant never had possession ot the lot; but the fourth plea is suspresents any legal defence according to the principles we have tained by the proof in every allegation. Neither of these pleas declared.

We do not question the right of the defendant, even under such a state of defective pleading to require the Court to instruct the jury to find a verdict on the proper issue sustained by his proof, because, in that event, the plaintiff would be placed in a condition to extricate himself from the vicious plea by a motion to enter a judgment *non obstante veredicto.* [Stephens on Plead. 129, and cases there cited.] The defendant did not pursue this course, but asked a charge which, if given, would have led to a general verdict, and the plaintiff would, in that case, have been remediless, (as under the issue of *non assumpsit,)* the reason on which the verdict was founded could not have been ascertained.

We wish our decision on this point to be understood as restricted to the precise case which appears, for if a general

charge is asked when all the pleas are *good*, we cannot see clearly how either party can be prejudiced.

We cannot perceive that the defendant has been injured by the refusal to give the charge requested, or by that actually given, therefore the judgment of the County Court is affirmed.