*Before FRANCIS H. CONE, Judge of the Ocmulgee Circuit.*

JESSE L. BAKER *vs.* WILLIAM EZZARD and REUBEN CONE.

*Motion for a New Trial.*

1. Fraudulent representations, in the sale of lands, as to their quality, are actionable.

2. A new trial will be granted, for misdirection of the Judge, in matters of law, material to the issue.

This case was refered to me, for decision, by an order, passed at the last term of De Kalb Superior Court.

The original action was brought, upon a promissory note, made by defendants, and payable to one James A. Cooper, or bearer. and by said Cooper transferred to the present plaintiff.

The defence set up, to the payment of the note, on the trial, was, that the note was given to Cooper, in part payment for a lot of land, purchased by defendants, of Cooper, and that at the time of the purchase, defendants had not seen said lot of land, and that, in making the purchase, they relied entirely upon the representations of Cooper, as to the location and quality of the land, and so stated to him, at the time of the purchase. That said Cooper represented said lot of land to be a rich, level, valley lot, and of great value, which representation, it was contended on the part of the defendants, was wholly false and fraudulent; and that said lot was mostly mountainous, and broken, and of little or no value, and that this was well known to said Cooper, at the time of sale.

It was further insisted, that plaintiff was interested in said lot of land, and that the note in controversy was transferred to him, in con-

sideration of his interest in said lot, and that the circumstances, attending the sale, were well known to him, at the time he received the note.

Upon the trial, the counsel for the defendants moved the Court, to instruct the Jury, that a false and fraudulent representation, by the vendor, as to the quality of the land sold, is the subject matter of action; and if they believed that such false and fraudulent representations were made, by the vendor, and that the defendants were damaged by them, to the amount of the note sued on; they would find a verdict for the defendants.

This instruction the Court refused to give; but gave the contrary, viz. That a vendor of real estate is not responsible, in damages, for false and fraudulent affirmations, as to the quality of the land sold.

The Jury found a verdict for the plaintiff, for the amount of the note.

Defendants' counsel then moved for a new trial, on the following grounds:

1st. Because the Court erred in the opinion, expressed to the Jury, that the vendor of lands is not responsible in damages, to the vendee, for a false and fraudulent representation, as to the quality of the land sold.

2nd. Because the Court erred in not charging the Jury, that such vendor is responsible to such vendee, for such false and fraudulent representations.

3rd. Because the verdict of the Jury is contrary to Law and evidence.

I shall consider the first two grounds, together; because they involve the same principle.

The doctrine, asserted in the charge to the Jury, and objected to as erroneous, in the motion for new trial, is this,—*That, in the sale of*

*lands, no fraud can be committed, by false affirmations, as to the quality of the lands, which shall subject the party making them to damages.*

This is a question of great importance in this State, where a vast quantity of land is sold, without having been seen, by one or other of the contracting parties; and where much reliance is frequently placed, upon the representations of the party, acquainted with the quality of the land. It is certainly a sound moral principle, that a person, who, by his own false and fraudulent representations, induces another to part from his property, for less than its value, or to give more for property, than it is worth, is bound to make it good. This is common sense, and common honesty; and although the range of legal obligation may not be co-extensive with that of moral, yet I can see no reason, why they should not be equally binding, in this case. Here, the vendor alleged, that he was acquainted with the land—that it was rich, valley land, and very valuable. The vendees say, " we " are unacquainted with the land, and purchase upon your representa- " tion, and give six hundred dollars, for a lot of land, proved not to be " worth more than one hundred."

The vendor has, then, got five hundred dollars for the lot of land, more than it is worth. How has he got it? By his own false and fraudulent representation. He has given to the vendor nothing, for this five hundred dollars. Is it right that he should retain it? Is it just? Is it Law? Would it not be holding out a bribe, for villainy and fraud? Would it not be saying to every man, that you can cheat, and defraud, as much as you please, in the purchase and sale of lands, and shall be protected by Law?

But let us see, whether the Law is so. The reason, given by those, who contend that a person who is not liable, for false and fraudulent representations, as to the quality of lands, is, that it is in the power of the party, to go and see it, and therefore it is his own folly, if he relies upon the representations of the other party.

This appears to me to be a very poor and weak reason, for sanc- tioning fraud and legalizing dishonesty. It might be very inconveni- ent, for the party to go and see the lands,—it might lie at a great distance from him. Many other, and good reasons might exist.

[Baker *vs.* Ezzard & Cone.]

Now is it not more for the welfare, interest, and security of society, that the Law should hold a man responsible, for his fraudulent representations, than to permit him to make them, and profit by them too, merely because the other party to the contract chose to put confidence in him, rather than submit to the expense and trouble of, perhaps, making a long journey to see his land ? By deciding, that a person shall be liable for his false and fraudulent representations, no person can be injured. By establishing a contrary doctrine, many have been, and will be, defrauded.

But authority is not wanting, upon this question ; and although, perhaps, no [decision of the English Courts can be produced, where an action has been sustained, for a false and fraudulent representation, as to the quality of lands ; yet the principle is fully recognized.

In England, the value, and of course the quality, of lands, is mostly ascertained by reference to the amount, for which they rent ; and little is said, in sales, about quality, other than as it is determined by the rent. In this country, no such standard of value prevails.

In the case of Risney *vs.* Sealey, 2 *Salkeld*, 211, the vendor represented to the purchaser, that the land rented for thirty pounds, when, in truth and in fact, it only rented for twenty ; and the Court decided, that for this false affirmation, an action lay.

In 2 *Lord Raymond*, 1118–19, the same question occurred ; and after very full consideration, was decided in the same way.

In the case of the Duke of Norfolk *vs.* Worthy, 1 *Campbell*, 337, the vendor represented the estate to be within one mile of a Borough, when, in truth and in fact, it did not lie within three or four miles ; and it was decided, that for this false representation, the contract should be rescinded.

The same doctrine is laid down and recognized, in 14 *Vesey*, 144 ; 1 *Salkeld*, 28 ; 3 *Merivale*, 704 ; and in *Sugden on Vendors*, 210.

Now there was the same objection, existing in these cases, to a recovery, as exists in the case under consideration. In the one, it

was in the power of the vendee, to ascertain what the property rented for, by enquiring of the tenant. In the other, it was also in his power to have looked at the estate, and to have ascertained whether it was within one mile, or four miles, of the Borough. It was a matter, open and visible to the senses; yet he chose to rely on the representations of the vendor, and was defrauded; and the English Courts decided, that he should recover for the fraud.

In the case under consideration, the vendees might have gone, and looked at the land. They did not; but relied upon the representations of the vendor, and were defrauded. And shall they not recover for the fraud?

Nor are American authorities wanting, upon this question. In 1 *Story's Eq.* 205, the learned author, in treating upon this subject, says, that, "if a person, owning an estate, should sell it to another, "representing that it contained a valuable mine, and the representa- "tions were false; the contract for sale, or the sale, if completed, "might be avoided, for fraud; but if he represents that it contained "twenty acres of woodland, or meadow, when it contained only nine- "teen acres and three-fourths, the small difference of a quarter of an "acre could have no influence on the mind of the purchaser, and "would not avoid the contract." Plainly indicating, that if there had been no woodland, or meadow, the contract might be avoided, for the fraudulent representation. Now, in both of these cases, it was in the power of the purchaser, to have gone and seen for himself, whether there was a valuable mine, or how much woodland, or meadow, there was.

The latter case is almost identical, with the case under consideration. Here, the land was represented to be rich, valley land, and very valuable: whereas it is mostly mountain, and of little or no value. Shall the contract be void, in the one case, and not in the other?

In Kentucky, it has been decided, that a fraudulent representation, as to the quality of lands, is actionable.—1 *Little*, 46.

The same doctrine has been established in Connecticut.—5 *Day*, 439. Though, previous to that time, a different doctrine prevailed.— 2 *Day*, 128.

[Baker *vs.* Ezzard & Cone.]

The Supreme Court of Alabama have also made a similar decision.—9 *Porter*, 165.

In the case of Wardell *vs.* Fostick & Davis, 13 *John. R.* 325, the vendor sold a tract of land, *without warranty of title*, falsely representing that it lay in the township of Moab, State of Pennsylvania, when in truth and in fact, there was no such township, nor no such land. This was well known to the vendor. The vendee brought an action, for the false and fraudulent representations, and the Supreme Court of New-York sustained the action. Now the same objection was urged, there, that is urged here, viz. that it was the duty of the vendee, to have gone and looked for the land, before he purchased; that whether it existed or not, was a matter, open and visible to the senses; and that if he chose to rely upon the representations of the vendor, it was his own folly. That case is therefore identical, in principle, with the present.

The Law is the same in South Carolina.—1 *Bay's R.* 276; 1 *Nott & McCord*, 278.

This latter case was an action, brought upon two bonds, given in consideration of the purchase of a tract of land : and one of the grounds of defence, relied on, was false representations, by the vendor, as to the quality of the land. In delivering their opinion, the Court say, " A deficiency in quantity, or *defect in quality*, where " there has been a false representation, are legitimate grounds for a " reduction of the price, or rescision of the contract, as the case " may be."

On full consideration of this branch of the case, I am therefore of opinion, that the interests of society, and of sound morality, as well as the preservation of good faith, in the making of contracts, require, that a person should be held responsible, for false and fraudulent representations, as to the *quality* of lands.

This principle is sustained, by the doctrines of the English Courts ; and has been expressly recognized and established, as Law, by the highest judicial tribunals of many of our sister States.

There was, therefore, error in the charge of the presiding Judge.

o

[Baker *vs.* Ezzard & Cone.]

In looking into the testimony in this case, I am by no means satisfied, that the evidence, as to fraudulent representations, was sufficient to justify the Jury, in finding for the defendants.    But, as the charge of the Judge withdrew from their consideration all the evidence upon that point, I think that the ends of justice will be best promoted, by submitting the case to the consideration of another Jury.    This I believe, too, to be in accordance with Law.    For if the Judge, at the trial of a cause, misdirect the Jury on matters of Law, material to the issue, the verdict will be set aside, and a new trial granted.— 6 *Modern R.* 242; 2 *Salkeld*, 649; 10 *Barn. & Cres.* 145; 5 *Ib.* 501; 3 *Bingham*, 319; 10 *Johnson*, 447; 5 *Day*, 479; 4 *Conn. R.* 356; 5 *Mass.* 438, 365; 9 *Cowen*, 674; 3 *Wend.* 418; 1 *Ib.* 511.

It is therefore ordered, considered, and adjudged, that the Rule Nisi be made absolute, and a new trial granted.