Thompson's Adm'r v. Christian et al.

---

## THOMPSON'S ADM'R *vs.* CHRISTIAN ET AL.

[BILL IN EQUITY BY VENDEE TO RESCIND CONTRACT AND ENJOIN JUDGMENT ON NOTES GIVEN FOR PURCHASE MONEY.]

1. *Vendee's right to rescind contract and enjoin judgment for purchase money.*—The purchaser of land, so long as the contract remains executory, has a right to demand a good title; but, after accepting a conveyance, the maxim *caveat emptor* applies with the utmost rigor, and he cannot, in the absence of fraud or mistake, rescind the contract in equity, and enjoin a judgment for the purchase money, as on an executory contract.

2. *Facts showing acceptance of conveyance.*—Where the vendee filed his bill to rescind the contract, and to enjoin a judgment for the purchase money, as on an executory contract, it was held that the pleadings and proof showed that he had accepted a conveyance, because, 1st, it was unreasonable to suppose that, after exhibiting the caution shown by other facts connected with the purchase, he would have rested for so long a period (three years) after discovering his vendor's want of title, without any written evidence of his purchase, when the agreement was that a conveyance "was to be executed in a very short time"; 2d, the bill did not allege, positively and explicitly, that he never accepted a deed, but only averred that the vendor "never complied with his promise in relation to the title to said land", and that complainant "has no deed to said land"; 3d, he executed a mortgage on the land, of even date with the notes given for the purchase money, to secure the payment of the notes, and recited therein that a deed had been executed to him; and, 4th, the register reported, on a reference, that he had constructive possession of the land by reason of the conveyance to him.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. WADE KEYES.

This bill was filed by James H. Thompson, the appellant's intestate, on the 20th November, 1845, and alleged the following facts: That on the 29th February, 1840, A. H. Christian and J. H. Carr (the former professing to act as trustee, and the other as the authorized agent of W. H. Carr, who was the other trustee, under a deed of trust which they pretended had been executed to said trustees by Pollard & Carr, a mercantile firm in the town of Gainesville) exposed certain real estate to public sale, and represented that the sale would convey a good title to the purchaser; that complainant had previously understood that said Pollard & Carr had made an assignment of their effects, and supposed that said assignment was fairly and honestly made to secure their creditors, but he had never seen the deed, and knew nothing of the facts and circumstances attending its execution; that, confiding in the representations of said Carr and Christian, and believing that he would get a good title, complainant became the purchaser of the land, at the sum of $1680; that when said J. H. Carr, a few days after the sale, called on him to execute his notes for the purchase money, complainant, having made some inquiries, was not satisfied that he would get a good title, and therefore refused to execute his notes; that said Carr thereupon assured him that he had

bought a good title, and promised that, if he would execute his notes for the purchase money, a good title should be conveyed to him, with a warranty of title from the trustees, and a relinquishment of dower by said Pollard's wife; that under these promises and representations he executed his notes for the purchase money, payable to said trustees, according to the terms of the sale, with one R. G. McMahan as surety; that said trustees afterwards brought suit on these notes, against complainant and his surety, and obtained judgments thereon in November, 1843; that complainant employed counsel to defend said suit, and was advised by them that he could not defend at law, but could only make his defence available in equity; that the attorneys of the trustees concurred in this opinion, and agreed that, if he would let judgments go against him at law, "he should have all the same advantages, and stand in all respects as to relief, as if he had interposed by bill in equity, and had obtained a hearing before judgment at law"; and that he let judgment by default go against him under this arrangement.

The bill further alleged, that complainant ascertained for the first time, in the spring of 1843, that said pretended deed of trust was executed on behalf of said Pollard under and by virtue of a power of attorney to one Arthur Slaughter, which in fact gave him no authority whatever for that purpose; that the firm of Pollard & Carr, at the time said deed was executed, had been dissolved, and said Pollard was then a lunatic; that said Pollard and Carr have both since died insolvent, and no administration has been granted on their estates, except that one Nash was appointed administrator of said Pollard for the purpose of defending a bill in chancery; that said A. H. Christian and W. H. Carr, the trustees in said pretended deed of trust, "are entirely insolvent, that no such titles as were promised to complainant can be had by them, and that their warranty, by reason of their insolvency, would be utterly valueless"; that complainant "has never had actual possession of said lot, nor has he had constructive possession thereof, at any time since he learned the state and difficulty of the title, but has abandoned all right to the same"; that in May, 1843, James Hair, as administrator of Samuel L. Jones, and Sperring & Laforgue, having

obtained several judgments against said Pollard & Carr, filed bills in chancery to set aside said pretended deed as fraudulent and void, and obtained a decree at the June term, 1845, declaring said deed fraudulent and void in fact and in law, and ordering an account of the property conveyed by it; that said Sperring & Laforgue, in March, 1842, caused said land to be sold under their judgment, "and thereby the title of said Pollard has passed to the purchasers at said sale, whereby it is placed entirely beyond the power of said trustees to convey to complainant a good title"; that "neither said Christian nor Carr ever complied with the promise made by said Carr, in regard to the title to said land, when said notes were executed, and he (complainant) has no deed for said land, or any instrument whatever in writing for the same"; that his bill was not sooner exhibited, because the plaintiffs in said judgments had not attempted to enforce them, and because he was awaiting the result of said litigation in chancery, in order that he might be fully advised as to the construction of said deed of trust and power of attorney and the parties in interest.

W. H. Carr, A. H. Christian, Sperring & Laforgue, James Hair, as administrator of Samuel L. Jones, and Arthur Slaughter, are made defendants to the bill; and the prayer is, that the sale to complainant may be set aside and rescinded, that the judgments at law may be enjoined, and for general relief.

Decrees *pro confesso* were entered against Slaughter and W. H. Carr, and the other defendants answered. Christian, in his answer, admits the sale to complainant, the insolvency of Pollard & Carr, his own insolvency, and the proceedings in the chancery suits; denies that he made any representations to the complainant about the title; and alleges that he does not know whether Carr made any such representations or not. Sperring & Laforgue answered on information and belief, denying the equity of the bill. Hair admits that complainant, when he purchased, supposed that the deed of trust had been fairly and honestly made; believes that the firm of Pollard & Carr was dissolved when the deed was made; admits the insolvency of Christian, and the insolvency and death of said Pollard and Carr; believes that complainant

had actual and constructive possession of the land, and a conveyance from the trustees; admits the proceedings in the chancery suits, and the sale under execution; and alleges that the legal title was not in Pollard & Carr, but was conveyed to the trustees by one Lewis on the 8th March, 1840.

A supplemental bill was afterwards filed, alleging that, in March, 1850, the land was sold under execution against said Christian and Carr, as trustees; and this fact was admitted.

The deposition of said Christian was taken by some of his co-defendants, under an order of court, subject to exception on the ground of incompetency from interest. The complainant moved to suppress his deposition, on the ground that he was a party to the suit, was liable for costs, and was interested; and it was agreed that this motion should be decided at the hearing on the merits.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

TURNER REAVIS, for appellant, made these points:

1. The bill contains abundant equity. The complainant states his claim to equitable relief, 1st, on the ground that the trustees represented that the sale would convey a good title, when it did not and could not; 2d, on the ground that, although he had given his note for the purchase money, he had no deed or other written evidence of title; 3d, on the ground that Sperring & Laforgue had had the property sold under execution, so that the trustees never could make him a title; 4th, on the ground that the deed of trust, under which the sale was made, had been set aside and declared void; 5th, on the ground that complainant, when he purchased, supposed that the assignment was *bona fide* and duly executed, when in fact it was not, and consequently he was mistaken; and, 6th, that he had been promised a good title as an inducement to execute the notes, and the promise had never been complied with. On any one of these grounds he was entitled to relief, whether he could have defended at law or not. If, however, on the case made by the bill, he could have defended at law, he was prevented from doing so by the representations and agreement of the plaintiffs' attorneys in the law court.

2. The trustees agreed to sell the title of Pollard & Carr,

but it has not been in their power to comply with their agreement at any time since it was made. The power of attorney from Pollard to Slaughter did not authorize him to join Carr in assigning the property of the firm, and Carr could only convey his own interest in the real estate of the firm.—Lang v. Waring, 17 Ala. 145; Anderson v. Tompkins, 1 Marsh. Dec. 456. If, therefore, Pollard & Carr had a title, and if the trustees made a deed to complainant, he only got half of what they contracted to sell him; and this brings the case within the rule, that a party may rescind the contract when he cannot get the title for which he contracted.—Sugden on Vendors, vol. 1, pp. 345-69; Meador v. Sorsby, 2 Ala. 712; Puckett v. McDonald, 6 How. (Miss.) 269. The maxim *caveat emptor* does not apply, where a particular title is sold, or where the conveyance under which the sale is made is fraudulent as to creditors.

3. The deed of assignment, under which the trustees sold the land, is fraudulent on its face.—Grimshaw v. Walker, 12 Ala. 101; Reavis v. Garner, *ib.* 661. The complainant was affected with constructive notice of this when he purchased, and therefore cannot, in any event, be protected as a *bona fide* purchaser.—Johnson v. Thweatt, 18 Ala. 742. Besides, the deed has been judicially declared null and void, on the ground that it is fraudulent as to the creditors of Pollard & Carr; and it would be unjust, as the court say in Meador v. Sorsby, *supra*, to compel him to receive a title which the creditors of Pollard & Carr may successfully dispute.

4. The complainant purchased, and the trustees sold, under the honest impression that the deed of trust was valid. This was either a mistake of fact, or a mistake of law; and on either ground complainant is entitled to relief.—Kennedy v. Kennedy, 2 Ala. 572; Lawrence v. Beaubien, 2 Bailey, 623.

5. The deed of assignment being fraudulent on its face, the judgment against Pollard & Carr under which the land was sold, and which existed at the time Thompson purchased, was a lien upon the land, if Pollard & Carr had the legal title; and the land having been subsequently sold under that judgment, and the money applied towards its payment, it is not in the power of the trustees, nor of any one substituted to their rights, to make Thompson a title.—Johnson v. Thweatt,

*supra.* It is immaterial whether Thompson has been in actual possession or not; for, if he has been, he is liable to account for the use and occupation to the purchasers at the execution sale, from the date of their deed, and to the creditors of Pollard & Carr for the residue.—Smith v. Houston, 16 Ala. 111; Johnson v. Thweatt, *supra.*

6. In point of fact, as shown by the evidence, the legal title was in Pollard & Carr.

7. The bill alleges that complainant never had a deed. The decree *pro confesso* against W. H. Carr is an admission of the allegation so far as he is concerned. The answer of Christian, the other trustee, who was one of the parties to have executed the deed, does not deny the allegation of the bill; and being a fact which must be presumed to have been within his knowledge, his failure to answer the allegation is an admission of the fact.—Kirkman v. Vanlier, 7 Ala. 217. This admission of Christian is evidence against Hair and Sperring & Laforgue, who claim through him.—Julian v. Reynolds, 8 Ala. 683; 6 How. (Miss.) 487; Field v. Holland, 6 Cranch, 8; Osborn v. U. S. Bank, 9 Wheaton, 738. *It is a fact, too, which cannot be contradicted.*—4 Barb. S. C. R. 265. The deposition of Christian, so far as it goes to show that he made a deed to Thompson, will therefore be disregarded. Besides, his deposition ought to be disregarded entirely, because he is a party to the record, is liable for costs, and is interested to the extent of his right to compensation for selling the property, and instituting suits for the purchase money. Allison v. Allison, 7 Dana, 90. The recital in the deed of trust from Thompson to Christian and Carr, to secure the payment of the notes for the purchase money, which is relied on as an estoppel, cannot have that effect, 1st, because of the admission to the contrary in Christian's answer, and the decree *pro confesso* against the other trustee; and, 2dly, because estoppels only operate between parties and privies.—2 Thomas's Coke, top p. 342. Such a recital would be no estoppel, even between the parties.—2 Johns. Ch. 210.

JAMES HAIR, *contra,* contended (*inter alia*) that, construing the bill most strongly against the complainant, the plain inference from its allegations was, that he had accepted a deed

from the trustees, and had constructive possession of the land; that this inference was supported by the facts shown in the record; and that, on this state of facts, he could have no relief in equity.

CHILTON, C. J.—In Cullum v. The Branch of the Bank of the State of Alabama at Mobile, 4 Ala. 21, it was decided, that the law confers upon the purchaser of land the right to demand a good title, so long as the contract remains executory; but, when fully consummated by the execution of a conveyance by all the necessary parties, then the rule of *caveat emptor* applies with its utmost rigor. So that, in such case, if the purchaser is afterwards evicted by a title to which the covenants in his deed do not extend, he is without relief either at law or in equity. In the absence of fraud or mistake, this rule is a good one, as it requires nothing more than every sane man should observe, and is culpably negligent if he does not, in obtaining title to his land.

In the case before us, we think it sufficiently appears by the record that a deed was executed by the trustees to the intestate of the appellant in his lifetime. We arrive at this conclusion from the following considerations:

1. It is alleged by the bill that Thompson, after he made the purchase, was unwilling to complete it, because he was not, upon inquiry, satisfied with the title he would get; that thereupon John H. Carr informed him, that a good title had been sold him, and promised and assured him that, if he would execute the notes for the purchase money, good titles should be conveyed to him,—that the trustees in said deed would fully warrant the title to him, and that the wife of said Pollard should execute a release of her dower,—which conveyance, it is averred, " was to be executed in *a very short time*"; and thereupon the notes, with security, dated the 29th February, 1840, were executed by Thompson. Having exhibited this much caution and solicitude with regard to the title, and having executed his notes upon the assurance that a deed with warranty, and a relinquishment of dower on the part of Pollard's wife, should be executed in a *very short time thereafter* by the trustees, Christian & Carr, it is quite unreasonable to suppose the vendee would have contented him-

self, without *any evidence whatever* in writing of his purchase, for more than three years, when, according to the bill, he discovered the trustees' want of title. This he found out in the spring of 1843.

2. In the next place, the bill avoids any direct allegation, as to whether the promised conveyance was executed. At least, its allegations may be literally true, and yet a deed may have been executed as agreed upon, and afterwards lost or destroyed, or put out of the complainant's possession. It is averred that no such titles as were promised by the trustees can be had by them,—that their warranty would be utterly valueless by reason of their insolvency; that complainant never had the actual possession of said lot, "nor has he had the *constructive possession* thereof, at any time *since he learned the state and difficulty of the title*, but has abandoned all right to the same"; that "neither said Christian nor Carr ever complied with the promise made by said Carr, in relation to the title to said land, when said notes were executed as aforesaid; and that he *has no deed* for said land, nor any instrument in writing whatever for the same." It is not averred that the trustees failed to execute a deed with warranty of title, but that they failed to comply with their promise,—it may be in failing, in the opinion of complainant, to convey a *good title* as promised, or in procuring a relinquishment of dower on the part of Mrs. Pollard, or in failing to do this in a "very short time." In either event, the bill might be literally true, and yet a deed have been executed; and, although the complainant may not have had such deed in his possession when he filed his bill, and was enabled to say, in the present tense, "he *has* no deed for said land," &c., it does not follow that he did not, at some previous time, have a deed for the same. This criticism might appear too rigid, but for the fact that it is strongly fortified by other facts developed by the record; as,—

3. It appears that Thompson executed a mortgage, with power of sale, of even date with the notes, to one D. M. Russell, on the same lot, to secure the payment of the notes given for the purchase-money, in which mortgage he recited that a deed was executed to him for the lot thus purchased; and,—

4. Christian, one of the trustees, is examined as a witness,

and testifies that he thinks a deed was made to Thompson; and,—

5. In the last place, the register reports that Thompson was in the *constructive possession*, by reason of the conveyance of the title to him; and to this report no exception was taken.

In view of all these considerations, we do not think the facts relied upon by the appellant sufficient to repel the conclusion that a deed was executed by the trustees to Thompson.

An effort was made to exclude Christian's deposition, on the ground that he was interested. The objection may be conceded to be valid, yet it does not affect the result, as the record amply sustains the conclusion at which we have arrived without this proof.

Having arrived at the conclusion that a deed was executed by the trustees to the complainant, Thompson, he could not file his bill as upon an executory contract, wholly disregarding the deed. Whether he has any remedy, except upon the covenants contained in his deed, is not a question which we need now decide.

Let the decree of the chancellor, dismissing the bill, be affirmed.