# Sivoly *v.* Scott *et al.*

### *Action on Notes for Purchase-Money of Land.*

1.  *When ruling on demurrer is revisable.*—This court will not revise the ruling of the primary court on a demurrer to evidence, when it is shown only by the bill of exceptions.

2.  *When purchaser can not resist action at law for purchase-money.*—A purchaser of lands can not, so long as he remains in possession under the contract, resist an action at law on the notes given for the purchase-money, on account of his vendor's want of title, or fraudulent representations as to the title, although he offered to abandon the possession and rescind the contract, and the vendor is insolvent.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. W. J. HARALSON.

This action was brought by Thomas O. Sivoly, against Mahlon Scott, George D. Shelton, and J. B. Dines; and was founded on three promissory notes, given for the purchase-money of a tract of land sold by plaintiff to said Scott, the other defendants signing the notes as sureties for said Scott. The defendants pleaded, "in short by consent, 1st, *non assumpsit;* 2d, payment; 3d, failure of consideration; 4th, want of consideration; 5th, fraud; 6th, set-off;" and issue was joined on these pleas. On the trial, as appears from the bill of exceptions, but not otherwise from the record, the plaintiff having read the notes to the jury without objection, "the defendants' counsel stated to the jury the facts which they expected to prove in defense of the action; whereupon, the plaintiff's counsel asked that said facts as stated might be reduced to writing, and they would demur to the same." The facts as stated being then reduced to writing, the plaintiff demurred to the evidence, and the defendants joined in the demurrer; "upon consideration whereof, the court overruled the demurrer, and, of its own motion, submitted the question of fraud to the decision of the jury; to which the plaintiff excepted."

"During the further progress of the trial, the defendant Scott testified in his own behalf, in substance, that he had bought from the plaintiff, just before the notes sued on were given, certain lands in said county, and agreed to give him four hundred dollars for the same; that said notes were given for a part of the purchase-money of said lands; that shortly after making said purchase, and in pursuance thereof,

[Sivoly v. Scott et al.]

he entered upon said lands, and had remained in the uninterrupted possession of the same ever since; that he had paid the plaintiff, as part of the price of the land, ninety-five dollars in a wagon and steers, and had also paid three dollars taxes due on the land when he purchased it; that shortly after said trade was made,. and after he had gone into possession of the land, he was informed that plaintiff's titles to said lands were not good; that he called on plaintiff immediately, and stated to him what he had heard, and proposed to surrender the lands, and to rescind the contract, if plaintiff would pay him back said sum of ninety-eight dollars so paid by him; and that plaintiff refused to do this, and told him he would hold him to the contract. Said Scott further testified, that on the day he made said offer to plaintiff, or soon afterwards, plaintiff and his wife executed and delivered to him a deed for said lands, with full covenants, and at the same time delivered to him the deeds under which he claimed title to said lands, and that he had the same ever since; also, that when he purchased said lands, plaintiff represented that he had a good title, and would make him a good title to the same; saying to witness, 'I can make as good title to said lands as can be made in Blount county,' or words to that effect."

Shelton, another one of the defendants, who had signed the notes as surety for Scott, on the latter's promise to give him a mortgage on the lands as indemnity, testified that he became uneasy on hearing that plaintiff's title to the land was defective, and asked him about it; that plaintiff, in reply, stated that his title was good, and said, "If my title is not good, you shall not suffer," or words to that effect; and that this conversation occurred after the notes had been signed, but before they had been delivered. J. H. Deal, in whose presence the conversation between said Shelton and plaintiff occurred, corroborated the testimony of said Shelton; but the plaintiff himself, being examined in rebuttal, denied that he had made such statements to said Shelton, or that he had made any representations whatever to Scott as to his title. It was shown that the lands had belonged to one Abston, who died in possession of them during the war, leaving a widow and two daughters; and plaintiff had bought them from the widow, one of the daughters and her husband, and the husband of the other daughter, who was dead, leaving two children. "The defendants proved, also, that the plaintiff was, in contemplation of law, insolvent, not having more property, real or personal, than was exempt by law from levy and sale for the payment of his debts."

"The foregoing being, in substance, all the evidence in the

[Sivoly v. Scott et al.]

case, the court thereupon charged the jury, among other things, as follows: 'The general rule of law is recognized, that the purchaser can not defend an action at law on the notes given for the purchase-money of lands, for want or defect of title to the same in his vendor, so long as he remains in possession thereof. But, in this case, if you believe, from the evidence, that plaintiff's title to the lands sold to Scott is bad, or defective; and that said Scott, on hearing of this, before the commencement of this action, in good faith offered to rescind the contract, and to restore the possession of the lands to the plaintiff, on the plaintiff's returning what Scott had paid him, and that the plaintiff refused this offer; then, this would be a sufficient compliance on the part of Scott with the general rule stated, and the defendants would be entitled to a verdict.' The plaintiff excepted to this charge, and asked the following charge, which was in writing: 'The defendants are not entitled to a verdict in this case, for the reason that plaintiff had no title, or had a defective title, to the lands sold to Scott, unless said Scott, before this suit was brought, abandoned the possession of said lands, or surrendered them to plaintiff; and a mere offer by him to rescind the trade, and abandon, or restore possession to plaintiff, would not be sufficient.' The court refused to give this charge, and the plaintiff excepted to its refusal."

The charge given by the court, the refusal of the charge asked, and the ruling on the demurrer to the evidence, are now assigned as error.

HAMILL & PALMER, for appellants, cited *Christian v. Scott*, 1 Stewart, 490; *Stone v. Gover*, 1 Ala. 287; *Hickson v. Lingold*, 47 Ala. 449; *Cullum v. Branch Bank*, 4 Ala. 21; *Wilson v. Jordan*, 3 Stew. & P. 92; *Clay v. Dennis*, 3 Ala. 375; *Starke v. Hill*, 6 Ala. 785; *Knight v. Turner*, 11 Ala. 637.

STONE, J.—Neither the demurrer in this cause, nor the action of the court upon it, is shown in the pleadings, or in the judgment entry. They are only brought to our notice in the bill of exceptions. We have repeatedly held, that rulings on demurrer, when thus presented, will not be considered in this court.—*Dill v. Petty*, 53 Ala. 641.

2. In *Cullum v. Branch Bank at Mobile*, 4 Ala. 21, suit had been instituted on notes given in the purchase of lands. Title had been made to the purchaser, and he had not been evicted. It was pleaded in defense of the action at law, that the vendor had not title, and that in making the sale he had falsely and fraudulently represented that the title was in him, and that it was full and complete, &c. Judge HENRY

GOLDTHWAITE, in delivering the opinion of the court, said: "If the defense of fraud was permitted in this case, to avoid a recovery at law, there is nothing in the record to show that the contract has ever been rescinded, and therefore A. (the vendor) hereafter might be liable to an action on his warranty; or, in the case of a title subsequently acquired by him, be estopped by his covenant from asserting it." In enumerating reasons why such defense should not be entertained in a law court, the opinion supposes the case of an eviction after the receipt of large rents or profits, and asks, "are these to remain unaccounted for, or must not the defense be denied," &c. The court adds, "This examination of principles and authorities leads us to the conclusion, that the defendant has no available defense at law."

The same question came before this court in *Hickson v. Lingold*, 47 Ala. 449. Ch. J. PECK delivered the opinion of the court in that case, and ruled in harmony with the decision in the case of *Cullum v. Br. Bank, supra.*

This question, in various forms, has been so often before this court, that an attempt to collate the cases would swell this opinion unduly. Many of the decisions, both at law and in equity, are collected and somewhat classified, in the case of *Kelly v. Allen*, 34 Ala. 663. If the appellees have a defense in this case, the authorities collected on page 669 of that case will probably furnish a sufficient guide. It can not be made in the form attempted in this case. The Circuit Court erred in the charge given, and in the refusal to charge as requested.—See *Lett v. Brown*, at present term.

The judgment is reversed, and the cause remanded.