# Thayer *v.* The State.

*Indictment for Murder.*

138     39
142     22
142     23
138     39
e143     23

1.  *Motion to quash; when comes too late.*—A motion to quash an indictment which is made after the arraignment of the defendant and after his pleading not guilty, comes too late and is properly overruled.

2.  *Pleading and practice; when ruling on demurrer to evidence not reviewed on appeal.*—This court will not revise the rulings of the trial court on demurrer to evidence, when such ruling is shown only by bill of exceptions.

3.  *Same; effect of joining issue on insufficient plea.*—Where a plea, though insufficient, is not demurred to but issue is joined thereon and the facts introduced on such issue sustain the plea, the defendant is entitled to judgment thereon.

4.  *Organization of jury; challenge for cause.*—Where, in the organization of a jury to try a case of homicide, one of the jurors drawn, when questioned as to his qualification, stated that he would not hang a man except for rape or assassina-

[Thayer v. The State.]

tion, and that assassination was where a man killed another for money or went to his house and killed him, or killed him at the instigation of others, and then further stated that he would not hang any man who had killed another in a fight, such juror is subject to challenge for cause.

5. *Evidence; admissibility of confession.*—Where the officer who arrested the defendant testifies that he made no threat nor offered the defendant any inducement to make a statement, statements made by the defendant to such officer relating to the crime with which he is charged, are admissible in evidence as voluntary confessions.

6. *Homicide; charge of court to jury.*—On a trial under an indictment for murder, a charge which instructs the jury that the fact that the deceased "died from the wound is not evidence of ill will or malice or premeditation and should not influence the jury when considering the elements of murder and manslaughter," is misleading and invasive of the province of the jury and is properly refused.

7. *Same; same.*—In such a case a charge which instructs the jury that "To be murder in the first degree the killing must have been done after deliberation, and deliberation means a cool state of the blood"; is properly refused as being confusing and misleading.

8. *Same; same.*—In such a case, a charge which instructs the jury that "Malice from the use of a deadly weapon can not be presumed in this case," is properly refused as invading the province of the jury.

9. *Same; same.*—On a trial under an indictment for murder, a charge requested by the defendant is properly refused which instructs the jury that "The evidence may convince you that the defendant is guilty and you may have fixed in your minds the opinion that he is. Still if the defendant probably killed Mike Sullivan under the honest and reasonable belief that he must do so to save his own life or to save himself from great bodily harm and that he had no reasonable mode of escape without increasing his danger, you should acquit him"; such charge ignoring the question of freedom from fault in bringing on the difficulty.

10. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "A life taken in the heat of passion suddenly aroused by hard blows upon the head made by the deceased at the time the life was taken, is not murder in any degree, and if you find that there were hard blows stricken by the deceased on defendant's head and that defendant's blood was sufficiently heated thereby as to cause him to act suddenly and in hot blood, he is not guilty of murder."

11. *Same; same.*—In such a case a charge is erroneous and properly refused which instructs the jury that "To convict the defendant of manslaughter in the first degree the jury must believe from the evidence in the case that defendant killed Sullivan purposely, that is, he voluntarily took his life without just cause and intended to kill him at the time he struck the fatal blow"; since defendant might have been guilty of manslaughter in the first degree if he had no intention to take life.

12. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that "It is for the jury to say under all the evidence whether defendant voluntarily took the life of Sullivan, that is whether at the time he struck the fatal blow he had the purpose and will to wound him and deprive him of life, and if he did not have that intention he is not guilty of manslaughter"; since the defendant might have been guilty of manslaughter in the first degree if he had no intention to take life.

13. *Charge as to reasonable doubt.*—In the trial of a criminal case, charges which instruct the jury that "If the jury are not entirely satisfied of the defendant's guilt they should acquit him," or that "one of the correct definitions of beyond a reasonable doubt is, to be wholly satisfied, or satisfied to a moral certainty," are erroneous and properly refused as exacting too high a degree of proof.

14. *Same.*—In the trial of a criminal case, a charge is erroneous and properly refused which instructs the jury that "A reasonable doubt is one that excludes every reasonable hypothesis except that of guilt of the defendant, and only when no other supposition will reasonably account for all the conditions of the case, can the conclusion of guilt be legitimately adopted."

15. *Same.*—In the trial of a criminal case, a charge is erroneous which instructs the jury that "they are to take and consider all the evidence in the case in the light of their experience as reasonable, fair-minded men; and upon such fair and reasonable consideration, to doubt defendant's guilt, means to acquit him."

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The appellant in this case, Leonard Thayer, was indicted for murder of Mike Sullivan, was convicted of murder in the second degree and sentenced to 12 years imprisonment in the penitentiary.

On September 5, 1902, the defendant was arraigned, and September 17, 1902, was set for his trial. Subsequently several other days were set for trial of the defendant, and the trial of the case was finally entered upon on December 2, 1902.

The defendant moved to quash the indictment upon the following grounds: "First. That at the time the grand jury heard the evidence and investigated this case, and before the finding of the indictment in the case, H. C. Kennard, who not a solicitor for the State, and not a grand juror, sworn according to law, nor a witness in the case, was present assisting the grand jury in taking the evidence in said cause. Second. That during the investigation of the evidence in said cause before the grand jury, and before the finding of the indictment, the grand jury permitted a person without authority of law, to be, and remain in the grand jury room, and to take part in discussion of the case before the grand jury." Upon this motion it was shown that H. C. Kennard was a stenographer and was in the grand jury room when the witnesses were examined, upon whose testimony the indictment against the defendant was preferred; that Kennard heard the witnesses examined and took down their testimony, which was written out on the typewriter and delivered to the solicitor by him; that before entering the grand jury room as such stenographer, he was sworn as a stenographer for such grand jury. Upon this evidence the defendant overruled the defendant's motion to quash the indictment and to this ruling the defendant duly excepted. Thereafter the defendant filed the following plea in abatement, which was duly verified by him: "Now comes the defendant, and pleads and says that he ought not to further answer the indictment in this case because the grand jury that found the indictment in this case and returned the 'True Bill' into open court, conducted themselves, and permitted others in the grand jury room to conduct themselves in such an unlawful and illegal manner that said indictment was found without authority of law, in this: First. That said grand jury permitted one, H. C. Kennard, who was not a witness in the case, nor a solicitor for the State, nor a member of

the grand jury, to be present at the time of the hearing of the evidence in said case, and while investigating the evidence in said case. Second. That said grand jury permitted a person not a member of said jury, and not a solicitor for the State, nor a witness in the case, to be present while said case was being investigated by them, wherefore the defendant prays judgment of the court, if he ought to further answer said indictment."

The bill of exceptions contains the following recital as to the evidence introduced in support of this plea and as to the demurrer interposed by the solicitor to the ruling thereof: "Thereupon defendant in support of his plea in abatement, offered evidence that one H. C. Kennard was a stenographer before said grand jury and was in the grand jury room when the witnesses were examined and upon whose testimony the indictment was returned into court, that Kennard heard the witnesses examined and, took down their testimony which was written out in long hand on a typewriter and delivered to the solicitor by him which he had then in court, that before entering the grand jury room as such stenographer he was sworn as a stenographer for said grand jury. To the sufficiency of this evidence the State by its solicitor demurred and the court sustained the demurrer and to the sustaining of this demurrer the defendant duly excepted."

The judgment entry contains no recital as to the ruling of the court upon the demurrer to the evidence. The recital of the judgment entry as to the rulings of the court on the plea in abatement is copied in the opinion.

In the organization of the jury to try the case, G. E. Harrison, who was summoned as one of the special venire was, while being examined as to his qualification as a juror, asked "Have you a fixed opinion against capital punishment?" To which he replied: "I would not hang a man except for rape or assassination." Upon the court then asking him what he called assassination, he replied: "Assassination is where a man kills another for his money or goes to his house and kills him, or kills him at the instigation of others." The witness further stated: "I would not hang a man where he kills another in a fight." Thereupon the State by its solicitor challenged the juror for cause, which challenge

was allowed by the court against the objection and exception of the defendant.

On the trial of the case the evidence for the State tended to show that the deceased was killed by being stabbed by the defendant with a pocket knife, the blade of which was from 2 1-2 to 3 inches long; that the defendant and the deceased had quarrelled in a bar room about a half or three-quarters of an hour before the fatal difficulty; that the deceased left the bar room and upon returning hit the defendant several blows upon the head, whereupon the defendant grabbed the deceased around the neck with his left arm and stabbed him with a knife which was in his right hand, from the effects of which wound the deceased died. That the deceased was smaller than the defendant, weighing about 145 pounds while the defendant weighed about 175 pounds.

The evidence for the defendant tended to show that at the time of the quarrel between the defendant and the deceased just before the fatal difficulty, a friend of both parties asked the deceased to leave the defendant alone, and spoke of the defendant as being an old man. That the deceased left the bar room and upon returning in a few minutes, he struck the defendant on the head several times and that the defendant, in the excitement produced by such assault, stuck a knife which he had in his hands in the deceased. That he had the knife in his hands cutting tobacco or trimming his finger nails.

Charles Vallely a witness for the State testified that he was the officer who arrested the defendant; that on the way to prison the defendant asked him if he was going to give him bail; that the witness told the defendant he could not until he saw how badly the man was hurt; that the witness made no threats nor offered the defendant any inducement to make a statement; that the defendant said the deceased slapped him, to which the witness replied that that gave the defendant no right to stick a knife in him; that the defendant then said, "I knew that I was doing allright." The defendant moved the court to exclude the statement, "I knew what I was doing allright." The court overruled the motion and the defendant duly excepted.

[Thayer v. The State.]

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The fact that Sullivan died from the wound is not evidence of ill will or malice or premeditation and should not influence the jury when considering the elements of murder and manslaughter." (2). "To be murder in the first degree the killing must have been done after deliberation, and deliberation means a cool state of the blood. (3.) "Malice from the use of a deadly weapon can not be presumed in this case." (4.) "The evidence may convince you that the defendant is guilty and you may have fixed in your minds that he is. Still if the defendant probably killed Mike Sullivan, deceased, under the honest and reasonable belief that he must do so to save his own life or to save himself from great bodily harm, and that he had no reasonable mode of escape without increasing his danger, you should acquit him." (5.) "A life taken in the heat of passion suddenly aroused by hard blows upon the head made by the deceased at the time the life was taken is not murder in any degree, and if you find that there were hard blows stricken by the deceased on defendant's head and that defendant's blood was sufficiently heated thereby as to cause him to act suddenly and in hot blood he is not guilty of murder." (6.) "To convict the defendant of manslaughter in the first degree the jury must believe from the evidence in the case, that defendant killed Sullivan purposely, that is, he voluntarily took his life without just cause and intended to kill him at the time he struck the fatal blow." (7.) "It is for the jury to say under all the evidence whether defendant voluntarily took the life of Sullivan, that is whether at the time he struck the fatal blow he had the purpose and will to wound him and deprive him of life, and if he did not have that intention he is not guilty of manslaughter." (8.) "If the jury are not entirely satisfied of the defendant's guilt they should acquit him." (9.) "One of the correct definitions of beyond a reasonable doubt is, to be wholly satisfied or satisfied to a moral certainty." (10.) "A reasonable doubt is one that excludes every reasonable hypothesis except that

[Thayer v. The State.]

of guilt of the defendant, and only when no other supposition will reasonably account for all the conditions of the case, can the conclusion of guilt be legitimately adopted." (11.) "The court charges the jury that they are to take and consider all the evidence in the case in the light of their experience as reasonable fair minded men; and upon such fair and reasonable consideration, to doubt defendant's guilt, means to acquit him."

SHUGART & BELL for appellant.—Where a demurrer is interposed to evidence the rule is that every intendment is taken against the party who demurs, and the Court must indulge all fair inferences of fact that might be drawn from the evidence against the demurrant.— *Hardie v. Turner,* 9 Ala. 110; *Donaldson v. Waters,* 30 Ala. 175; *State v. Addison,* 2 So. Car. 356; *Nixon v. State,* 68 Ala. 535.

The plea in this case was not demurred to; evidence was offered in support of the plea—which was sufficient to sustain the averments of the plea on demurrer.— 6 Ency. Pl. & Pr. 442; *Browder v. Irby,* 112 Ala. 379; *West. Ry. v. Walker,* 113 Ala. 267.

If the plea was insufficient, the solicitor should have demurred to the plea or moved to strike, but having taken issue on it and having demurred to the evidence, the insufficiency or immateriality of the plea was not raised and it was error to sustain a demurrer to evidence which *fully supported* the plea.—*White v. Yawkey,* 108 Ala. 370; *Hobbie v. Bank,* 107 Ala. 329; *Sylvester's case,* 72 Ala. 206; *Winter case,* 123 Ala. 1; *State v. Ellis,* 74 Mo. 207; *State v. O'Hara,* 92 Mo. 59; *Welche's case,* 96 Ala. 92; *Allen case,* 111 Ala. 90; *Elmore case,* 92 Ala. 51; *Mose case,* 36 Ala. 211; *Webb case,* 106 Ala. 26; *Barnes case,* 117 Ala. 138.

MASSEY WILSON, ATTORNEY GENERAL, for the State. The motion to quash was properly refused.—*Crawford v. State,* 112 Ala. 1.

A ruling on demurrer to the evidence must be shown by the record proper and not by the bill of exceptions, and when not so shown will not be reviewed by this court.—Code, § 3324; *Sivoly v. Scott,* 56 Ala. 555.

[Thayer v. The State.]

The juror, G. E. Harrison, on his *voir dire* stated that he would not hang a man, except in certain cases, and was then challenged by the solicitor for cause and the challenge allowed, against the defendant's objection. The action of the court was proper.—Code § 5018; *Murphy v. State,* 37 Ala. 142; *Harrison v. State,* ·79 Ala. 29.

The confession of the defendant testified to by the witness Vallely were admissible in evidence.—*Washington v. State,* 106 Ala. 58; *Gunter v. State,* 111 Ala. 23; *Oliver v. State,* 17 Ala. 587; *Goldsmith v. State,* 105 Ala. 8; *Scott v. State,* 105 Ala. 57.

The charges requested by the defendant were properly refused.—*Cleveland v. State,* 86 Ala. 1; *Adams v. State,* 115 Ala. 90; *Wilkinson v. State,* 106 Ala. 23; *Beasley v. State,* 50 Ala. 149; *Stoball v. State,* 116 Ala. 454; *Gilmore v. State,* 126 Ala. 20; *Martin v. State,* 119 Ala. 1; *Hornsby v. State,* 94 Ala. 55; *McManus v. State,* 36 Ala. 285; *Griffin v. State,* 90 Ala. 583; *Beagler v. State,* 110 Ala. 11; *Torrey v. Burney,* 113 Ala. 496; *Bones v. State,* 117 Ala. 138; *Yarbrough v. State,* 105 Ala. 43.

HARALSON, J.—On the 5th day of September, 1902, the defendant being arraigned in open court, pleaded not guilty to the indictment, and a day was set for his trial. The cause appears to have been passed from time to time, until the 2nd day of December, 1902. On the latter date, the defendant moved to quash the indictment, on grounds set out in his motion therefor, which motion, after hearing and due consideration was properly overruled. Thereupon, the defendant pleaded in abatement to the indictment, upon the same grounds that he had moved to quash it.

By act of the legislature (Acts, 1900-1901, p. 308), the solicitor is authorized to employ a stenographer, whose duty, among other things, is to attend before the grand jury when required by the solicitor, for the purpose of taking down and transcribing the testimony of witnesses before that body, who shall take an oath to faithfully discharge the duties imposed on him, and not to divulge any secrets that may come to his knowledge before the grand jury. The evidence introduced by the

defendant in support of his plea, did not disclose anything more than was authorized by the act referred to, to be done.

It appears by the bill of exceptions that the solicitor demurred to this evidence and the demurrer was sustained, but this appears only in the bill of exceptions. The judgment entry with reference to the plea recites, that "said plea coming on to be heard and determined by the court, issue being joined on said plea, after hearing the evidence and argument of counsel thereon and due consideration thereof by the court, it is ordered by the court, that said plea be and the same is hereby overruled."

The ruling of the primary court on a demurrer to the evidence when shown by bill of exceptions, is not subject to revision by this court.—*Sivoly v. Scott,* 56 Ala. 555. We are remitted, therefore, to the ruling on the plea, to the recitals of the judgment entry, where they can only properly appear. That recital is, as has appeared, that the plea was overruled. The court was without authority to overrule the plea in abatement. The issue of fact presented by the plea, issue having been joined thereon, had to be tried, presumably by the jury, or by the court, if there was an agreement to that effect. The evidence offered on the trial of the plea, fully supported it, and if the issue had been tried before the jury, the defendant would have been entitled to the general charge, to find for the defendant on issue joined on this plea, and if tried by the court without a jury, judgment should have been entered sustaining the plea and abating the indictment. The evidence as set out in the bill of exceptions, taken in connection with the statute providing for a stenographer to attend before the grand jury, for the purpose therein specified, showed that H. C. Kennard, the stenographer, was properly before that body, and the fact of his presence there, was no ground to quash or abate the indictment, but this evidence was not within the issue presented by the plea and joinder of issue thereon. The sufficiency of the plea, when tested by demurrer, on the right of the stenographer to be before the grand jury, should have been replied to the plea. The State by taking issue on the plea, made

[Thayer v. The State.]

it material, and entitled the defendant to judgment on the facts if alleged, notwithstanding the facts *aliunde* as to the right of the stenographer to be before the grand jury.

The juror, G. E. Harrison, was, upon his statements, clearly subject to challenge by the State.—Code § 5018; *Murphy v State*, 37 Ala. 142; *Harrison v State*, 79 Ala. 29.

The confessions made by defendant to the witness, Vallely, were clearly competent to go to the jury.— *Washington r State*, 106 Ala. 59.

Charge 1 by the defendant was properly refused. It is misleading and invasive of the province of the jury. It is always competent to prove that death resulted from a wound voluntarily inflicted by the defendant, and such evidence, together with all the other evidence in the case, is a matter proper for the consideration of the jury, in determining the guilt or innocence of defendant, and the grade of the offense,—if found to be guilty of any,—in the infliction of the wound. It can not be said as a matter of law, that the deadly character of the wound, furnished no inference of malice and premeditation, when considered with reference to all the evidence. Moreover, it singled out and sought to lay stress upon a single phase of the evidence.—*Olcan v. State*, 17 Ala. 588.

In charge 2, the words, "cool state of the blood," are employed. Whether they mean the same thing as "deliberation," also therein employed, and no more, we need not now determine. The direct effect of giving such a charge, would have been to confuse and mislead the jury.—*Cleveland v. State*, 86 Ala. 2.

Charge 3 invaded the province of the jury, and was properly refused.

The predicate laid for charge 4, was not sufficient for its giving. Moreover, it ignored the question of freedom from fault in bringing on the difficulty.

All that is predicated in charge 5 may be true, and yet defendant may, under the evidence, have been guilty of contributing by his conduct to bring on the difficulty, and may have had reasonable mode of escape.

Charge 6 was bad. Defendant might have been guilty

4

of manslaughter in the first degree, if he had no actual intention to take life.—*Lewis v. State*, 96 Ala. 6. For like reasons, charge 7 was properly refused.

Charges 8 and 9 exacted too high a degree of proof— *Griffin v. State*, 90 Ala. 588.

Charge 10 is identical with one considered and condemned in *Yarbrough v. State*, 105 Ala. 45, 56.

Charge 11 has been too often condemned to require further notice.

Reversed and remanded.

