# Nordan v. The State.

## Indictment for Murder.

1. *Trial and incidents; organization of jury.*—Where, on a trial for a capital offense, the court first organizes one jury, and, leaving the second jury incomplete, proceeds with the trial of cases before the completed jury, and later, in the same day, completes the organization of the second jury, and then orders fifty special jurors who, with the two regular jurors, are submitted as a special *venire* for the trial of the defendant, and duly served upon him, the proceeding is regular, and not prejudicial to the defendant.

2. *Same; same; residence of juror.*—Where a county is divided into two Circuit Court Districts, the fact that a juror called

[Nordan v. The State.]

to try a case in one district, resides in the other, is no disqualification, unless the law providing for the separate districts make it such.

3. *Same; same; excusing juror.*—The matter of excusing a juror, regularly summoned, is within the sound discretion of the trial court, and, on appeal, will not be reviewed unless an abuse of such discretion appears.

4. *Grand jury; organization; Code, Sec. 5269 construed.*—Where a grand jury is organized, consisting of fifteen members, and, upon considering an indictment, it appears that two of such members are of kin to the defendant, and are thereupon excused from the consideration of the particular indictment, thus leaving thirteen members of the jury, which is the lowest number authorized by law, which number begin taking and considering the evidence, and afterwards, before the consideration is completed, one of them is excused by the court, and thereupon the court regularly draws three more members to complete the jury, and, as thus completed, it begins anew to take evidence, and finds an indictment, and then the two members first excused because of relationship, and the one temporarily excused, take their places on such jury, and the three specially drawn are discharged, the indictment should be quashed, as the grand jury finding it was not legally organized, as the curative effect of Section 5269 of the Code does not apply to illegal action after the grand jury has once been legally organized.

5. *Same; same; same.*—There are but two classes of cases in which objections to an indictment, when they are based on irregularities in the organization of a grand jury, can be sustained: first, when such jurors were not drawn in the presence of the *officers designated by law;* second, where there is some *order of the court below,* or some action of the presiding judge, appearing of record in the cause, and relating to the organization of the grand jury, which is without warrant in the statute, or *contrary to its provisions.* This embraces some judicial order of the *Court,* as contradistinguished from any act of its *officers* while ministerially executing such order when lawfully made.

6. *Same; same; pleading; practice.*—An objection to an indictment, based upon the illegal organization of the grand jury which found it, should be raised by motion to quash the indictment, and not by plea in abatement, for the reason that a plea to the indictment is an admission of its genuineness. But where such plea is filed, setting out the facts claimed to show the indictment to be void, and the State,

without objection, takes issue on the plea, the averments are thereby made material, and the defendant is entitled to judgment on the facts alleged in the plea.

7. *Homicide; evidence.*—Where a defendant is charged with the murder of another by poison, it is competent for a physician to testify that he was called to see the deceased before death, and to testify as to the suffering of deceased, convulsions, and other matters shedding light upon the cause of death; also, to testify as to holding an autopsy, dissecting, sealing and sending to the State Chemist, for analysis, portions of the stomach of the deceased.

8. *Same; same; motive.*—Where a husband is charged with the murder of his wife by administering poison to her, it is admissible for a witness to testify as to the condition of the deceased when witness saw her before death; what she said to the defendant, and how he acted; also, as showing a motive for the alleged crime, that deceased had a baby about four weeks old, and that she had been married to defendant about two weeks. And further, as showing motive, evidence is competent showing that bastardy proceedings had been instituted by deceased against defendant before their marriage, and an indictment was pending against him for seducing her, and for attempting to procure an abortion. In short, any evidence, which tends to show a motive for the commission of a crime, however slight, should be left to the consideration of the jury.

9. *Homicide; evidence; res gestae; dying declarations.*—Where a defendant is upon trial under an indictment charging him with murder by administering poison to the deceased, and it is shown that he gave deceased certain powders as a headache remedy, a statement by the deceased shortly afterwards, and when apparently in pain, saying that "I took the medicine Walter (the defendant) gave me, and it is killing me; run for a doctor," is not admissible as a dying declaration, but, under the circumstances, is admissible as a part of the *res gestae.*

10. *Same; same; evidence of deceased witness on former trial.*—To authorize the admission of testimony of a witness, since deceased, given on a former trial, it must be shown that the testimony was given in a case where the parties and the issues were the same as in the case in which it is proposed to prove the testimony of such deceased witness. But this rule does not apply only in cases where the main issue is the same. Where the particular issue, such as the genuineness of certain letters, arise in both cases, testimony of a deceased

[Nordan v. The State.]

witness given in a former case between the same parties, on that particular issue, is admissible in the latter case.

11. *Same; same.*—Where a defendant, charged with murder, sets up as a defense, that the deceased committed suicide, it is competent to show, by the defendant testifying in his own behalf, that the deceased had before made threats of taking her own life; and any acts or conduct by the deceased, evincing such intention, is admissible in evidence.

12. *Same; same; charge of court.*—A charge of court to the jury, that "There is no contradiction within the proper meaning of that term, where two testify that they were present, and heard a conversation, and one testifies that he heard a certain portion of the conversation, and the other testifies that he did not hear that portion of it," is erroneous, as it invades the province of the jury, to whom the question should be submitted, as to whether, under the circumstances, there was a conflict or not.

13. *Same; same; same.*—A charge that "A probability of the defendant's innocence exists only when the testimony showing his innocence is stronger than that showing his guilt," is erroneous. A probability of innocence may exist when no testimony has been offered by the defendant, and there is also a lack of testimony on part of the State, tending to show his guilt.

14. *Charge of Court; abstract charges.*—A charge requested, which is based upon a hypothesis not shown by the evidence, is abstract, and should be refused.

15. *Same; same; reasonable doubt.*—A probability of innocence, and a reasonable doubt of the guilt of the defendant, are not the same thing; a reasonable doubt of guilt may exist, although there may not be a probability of innocence.

16. *Same; same.*—Charges that seek to give undue prominence to particular parts of the evidence, and such as are abstract, argumentative or misleading, and charges that are nothing more than duplicates of other given charges, are always properly refused.

APPEAL from Henry Circuit Court.
Tried before Hon. JOHN P. HUBBARD.

The appellant, Walter L. Nordan, was indicted for the murder of his wife, Nola Nordan, by administering, or causing to be administered to her, poison. It is not necessary to set out the various counts contained in the

indictment; nor is it necessary to set out in detail the evidence given upon the trial. It was shown without dispute that the deceased complained of suffering from a headache; that, on request, the defendant brought her certain powders, which he represented to be headache powders; that the deceased took such powders, either from defendant, or another person in the presence of defendant, and at request of defendant. That shortly afterwards the deceased appeared to be in violent pain, and died, physicians testifying that her death was caused by strychnine poison. Evidence was introduced to show that the defendant had bought strychnine the day before, but there was also evidence tending to show that it was bought with the declared intention of poisoning a dog, and that it, or a part thereof, was used for that purpose. It was also shown that, at the time the defendant proposed to give his wife headache powders, he left the house with that declared intention, and purchased such powders, and returned home, when his wife took the powder, alleged in the various counts of the indictment to have been strychnine. It was shown that the defendant and deceased had, at the time of her death, been married about two weeks, and that deceased was the mother of a child about four weeks old; also, that, prior to the marriage, the deceased had been arrested and tried in bastardy proceedings, instituted by the deceased, and also under warrants charging him with her seduction and attempting to produce an abortion of the child with which she was pregnant. The defense was based on the ground that the deceased committed suicide, and, in support thereof, the defendant offered in evidence certain letters written by deceased, and other evidence showing threats and intention on her part to take her own life by poison. So far as is necessary for an understanding of the opinion, it sets out the substance of the facts upon which it is based. Also, the facts and incidents connected with the organization of the grand jury, and impanelling of the petit jury, are shown thereby.

The defendant was convicted of murder in the first degree, and sentenced to imprisonment in the penitentiary for life. Therefrom, he appeals.

2s

[Nordan v. The State.]

ESPY & FARMER, for appellant.

MASSEY WILSON, with whom was W. C. OATES, *contra.*

DOWDELL, J.—The defendant was tried and convicted on an indictment charging him with murder. The indictment as returned into court by the grand jury contained eleven counts. A *nolle prosequi* was afterwards, on motion of the solicitor, entered as to four of them, the third, fourth, fifth and seventh. To the remaining counts demurrers were interposed by the defendant, and which demurrers the court overruled.

Some of these counts are wanting in proper averments, while others contain unnecessary averments. The first and second fail to aver that the defendant killed the deceased, except possibly in an inferential way. There is, to say the least, grave doubt of their sufficiency. As the indictment must be quashed for reasons that will be stated later on, and another indictment will have to be preferred, we take occasion here to say, that we can see no necessity for multiplying the counts in the indictment, when two would be sufficient to meet any phase of the evidence in the case:

For illustration, with proper commencement and conclusion of the indictment as provided in section 4923 of the Criminal Code, a count charging that the defendant, Walter L. Nordan, unlawfully and with malice aforethought, killed Nola Nordan by administering to her poison, to-wit, strychnine; and a second count, charging that Walter L. Nordan unlawfully and with malice aforethought killed Nola Nordan by causing to be administered to her poison, to-wit, strychnine.

There was no error in overruling the defendant's motion to quash the *venire* from which a jury to try the defendant was to be selected. Twenty-four regular jurors had been drawn, three failed to appear or were excused. The court then organized and empaneled jury No. 1 of twelve jurors, but did not immediately complete jury No. 2, and proceeded with the business of the court, hearing and trying one case with jury No. 1, and furthermore made an order setting a day for the trial of the defend-

ant and ordered fifty special jurors to be drawn according to law, who together with the regular jurors organized for the week would constitute the special *venire* in defendant's case. On the same day, being the first day of the term, jury No. 2 was organized and the deficiency supplied, as provided by § 5011 of the Code. With jury No. 1 and jury No. 2 as thus organized, and the fifty special jurors, the special *venire* was made up and duly served on the defendant. The defendant was in no wise prejudiced, nor deprived of any right by the action of the court. Jury No. 2 was completed as required by the statute and as completed the law made it a part of the *venire* for the trial of the defendant.

It was immaterial whether the juror Sanders lived in the Columbia or Abbeville division of the circuit court of Henry county; if otherwise qualified, and he was a resident householder or freeholder of the county, he was a competent juror. The act creating the several divisions of the circuit court of Henry county does not fix as an additional qualification of the juror that he shall live in the division of which he is summoned as a juror. Acts 1884-5, p. 726.

The matter of the sufficiency and reasonableness of the excuse of a juror, for not serving as such, is largely within the sound discretion and judgment of the trial court, when it comes to excusing one by the court for good and sufficient cause from service, who has been drawn to serve as a juror. We are not prepared to say that, to save one's property in emergency from destruction is not a sufficient reason for the trial court to excuse, as for good cause shown. Nor are we prepared to say that the court in the instance of the juror Trammel abused its power in excusing said juror for cause under the circumstances stated.

A motion was made by the defendant to strike the indictment, which was overruled by the court, and then followed a motion to quash, which was also overruled. The defendant then filed pleas in abatement to the indictment upon which issue was joined by the State, and a trial had by a jury, and upon which trial, on the evidence introduced, the court, at the request of the solicitor

in writing, gave the general affirmative charge in favor of the State. No question was raised as to the timeliness in making the motions or filing the pleas, but a hearing of the same was entered into and evidence in support thereof regularly introduced and a judgment rendered on the merits. The main grounds of the motion as well as of the plea in abatement went to the legality of the grand jury that found and returned the indictment. In support of the motions and pleas the following facts were shown: at the regular fall term, 1902, of the circuit court a grand jury was regularly organized and, as organized, consisted of fifteen members, the minimum number for a duly and legally constituted grand jury. When they entered upon the discharge of their duties, the defendant's case, in which the present indictment was found, came before them for investigation, and it was then ascertained that two of the members of the grand jury, H. T. Adams and W. J. G. Mouring, were disqualified to act by reason of their relationship to the defendant, and they were permitted to withdraw, and did withdraw, from the grand jury pending the investigation and consideration of said case. The withdrawal of these two grand jurors left thirteen, a competent number under the statute to proceed with the investigaton and to act upon a bill, and these thirteen did proceed with the investigation and had examined several witnesses, when another one of the grand jurors, George L. Wright, was temporarily excused by the court to attend the funeral and burial of a kinsman, and was absent a day and a half. With this juror temporarily absent there were left only twelve grand jurors. It was under this condition that the court by an order had three other persons, Fleming, Laney and Doswell, summoned and sworn and placed on the grand jury, thereby completing the number up to fifteen, and this for the purpose of investigating, considering and acting upon the charge against the defendant then pending before the body. As thus constituted, and with the said three persons so added to the grand jury and acting with it, the investigation was proceeded with, the several witnesses who had been previously examined being recalled and exam-

ined as well as others, and upon consideration the present indictment was found and returned into court. After this action, the three jurors, Fleming, Laney and Doswell were excused from further service on the grand jury, and the two, Adams and Mouring, who because of their relationship to the defendant had withdrawn pending the said investigation, returned to service in the discharge of their duties as grand jurors, and the juror Wright, who had been temporarily excused from court to attend the funeral of his kinsman, after the indictment had been acted upon and returned into court, also returned, and entered upon his duties as a grand juror and continued to act as such until the grand jury had completed its labors for the term and were finally discharged by the court. After the indictment was returned into court, further than the formal arraignment of the defendant, no action was taken in the case, at that regular term, and the court thereupon made an order for an adjourned term to be held beginning on the first Monday in December following. It was at this adjourned term that the motions were made and pleas in abatement were filed. As a part of the record there is a minute entry of the court which recites that "The grand jury at this term came into court with the solicitor and made known to the court that they had under consideration the case to-wit, The State v. Walter Nordan, charged with the murder of Nola Nordan, and that, by reason of the relationship to the person charged, the number of the grand jury was reduced below the number of thirteen, and the court in accordance with the statute supplied the deficiency by the selection according to law from the qualified bystanders of W. Y. Fleming, Z. W. Laney and J. M. Doswell, and they were legally sworn as such grand jurors to fill such deficiency, and the bill of indictment in such case was returned into court by the grand jury so constituted. And the entry of record, as to said matters of said selection of said grand jurors and of the said indictment vs. said Walter Nordan, was made on a day of the adjourned term of this court." This entry bears date of November 10, 1902. Following this is the minute entry of the organization of the adjourned term on the 1st day of December, 1902.

It will thus be seen that the grounds of objection, in the motions and in the pleas in abatement, were not directed to a want of qualification in any member to become a juror, nor to the manner of drawing and summoning the jurors to be organized as a grand jury, nor to the original formation of the grand jury, but to the illegal action of the court subsequent to the regular organization of the jury. The irregularity objected to is not such as is contemplated in section 5269 of the Code, and is, therefore, not embraced within the curative provisions of the statute. In *Billingslea v. State,* 78 Ala. 486, it was said: "There are but two classes of cases in which objections can be sustained to an indictment, when they are based on irregularities in the organization of a grand jury: First, when such jurors were not drawn in the presence of *the officers designated by law.* (Citing Code, § 4889, which is the same as § 5269 of the present Code, and *Bonlo v. State,* 51 Ala. 18) : Second, where there is some *order of the court below,* or some action of the presiding judge, appearing *of record* in the cause, and relating to the organization of the grand jury, which is without any warrant in the statute, or is *contrary to its provisions.* This embraces some judicial order, or act of *the court,* as contradistinguished from any act of its *officers* while ministerially executing any such order when lawfully made." Citing *Cross v. State,* 63 Ala. 40; *Finley v. State,* 61 Ala. 201; *Boles v. State,* 63 Ala. 30; *Berry v. State, Ib.* 126; *Young v. State, Ib.* 141; *Scott v. State, Ib.* 59.

In the case before us, the objections to the indictment were based on a judicial order, or act of the court. And for the purposes of the present case it is immaterial as to the proper manner or practice of making the objections, as they were made both by motion and by the plea in abatement. But in *Sparrenberger v. State,* 53 Ala. 481, it was said that a plea to the indictment is an admission of its genuineness, and it was there ruled that if the objections went to the annihilation of the indictment. "To the denying it ever had a legal existence," the proper mode of assailing it was by motion to quash and not by plea in abatement. In the case of *Thayer v.*

*State,* 138 Ala. 39, there was a motion to quash the indictment, which was overruled by the court, and then a plea in abatement was filed setting up the same matter as contained in the motion. No demurrer was interposed to the plea, nor replication made thereto, but issue was taken on it just as in the case before us. It was there said, "The State, by taking issue on the plea, made it material, and entitled the defendant to judgment on the facts it alleged, notwithstanding the fact *aliunde* as to the right of the stenographer to be before the grand jury." In that case the court overruled the plea instead of allowing the jury to pass on the facts after issue joined; here the court gave the general affirmative charge in favor of the State on the pleas, notwithstanding the fact that there was evidence supporting the first and second of the defendant's pleas. The pleas having been made material by issue being taken on them, under the evidence on the trial of this issue, the affirmative charge should not have been given for the State.

The temporary absence of the juror Wright, by permission of the court, did not in law operate to reduce the number of grand jurors so as to authorize the court under the statute to supply a deficiency. Wright continued a member of the body, and the grand jury as constituted, after the withdrawal of Adams and Mouring because of their relationship, was still composed of thirteen members. Under the authority of *Peters v. State,* 98 Ala. 38, without an order having been previously made by the court discharging the juror Wright from the grand jury, and which was not done, and thereby diminishing the membership of that body as constituted, below the number required by law to act, the action of the court in adding to the grand jury the three persons, as was done in this case, was without warrant and authority of law, and the indictment returned by such grand jury was illegal, and should have been quashed on defendant's motion.

It was entirely competent for the witness, Dr. Long, who was examined on behalf of the State, to testify to his being called to attend the deceased at the time she was suffering, and to describe her condition and tell

all about how she was suffering and of the convulsions, etc. The defendant was charged with having killed the deceased by administering poison to her, and the nature and character of her suffering and the manner of her death was material, and any evidence shedding light upon these matters was relevant. So, too, was it entirely competent to show by this witness that an autopsy was performed, and that a portion of deceased's stomach was taken out and sealed up in a jar and sent to the State Chemist at Auburn. There was no error in overruling the objections to the testimony of this witness.

It was also competent to show by the witness, Mrs. Mouring, the mother of the deceased, as to the condition in which she found her daughter when the witness got to her, and what she said to the defendant and how he acted on that occasion, and the further facts that the deceased had a young baby only four weeks old, and that the defendant and deceased had been married only two weeks. This, in connection with other evidence in the case tending to show motive, was competent and relevant along that line. It was competent along the line of motive for the prosecution to show that bastardy proceedings had been instituted by the deceased against the defendant before their marriage, and also to show pending prosecutions against the defendant for the seduction of the deceased and for attempt to procure an abortion. And, in this connection and for like reasons, it was competent to show the circumstances under which the marriage between the defendant and deceased took place— the antenuptial contract entered into by them, and the declarations of the defendant before the marriage as to how long the marriage relations would or might continue.

There was evidence that the defendant gave to the deceased a headache powder and then left her and went to his store, and in a short while after she had taken the powder, about twenty minutes, she was found to be in apparent pain and suffering. The witness, Kinsey, was permitted to testify, against the defendant's objection, that at this time the deceased said, "I took the medicine

that Walter (meaning the defendant) gave me, and it is killing me, run for the doctor." This evidence was not admissible as a dying declaration, for it is clearly wanting in the proper predicate for the admission of such evidence. We are inclined to the opinion that the taking of the medicine, the immediate effects and quick results, constituted one continuous act, and a declaration or statement such as the one made, and at the time made, was admissible as *res gestae*. There is no merit in the objections to the testimony of Dr. Ross. It was competent for him to state the extent of his experience. He was offered as an expert witness upon poisons. His evidence as to receiving the jar containing the stomach, which he analyzed, was to the identification of the jar as the one sent him by Dr. Long, and was properly admitted.

The witness, P. A. McDaniel, was permitted to testify, against the defendant's objection, that, in the case of the State v. Nordan, this defendant, charged with seduction of the deceased, the deceased was present and testified as a witness in that case on behalf of the State, and in her testimony then swore that certain letters, which she produced on that trial, and being the same offered in evidence by the State in the present case, were in the handwriting of the defendant. We think this evidence was admissible. We recognize the rule that in admitting evidence of the testimony of a witness on a former trial who has since died, it must be shown that the testimony of the deceased witness was given in a case where the parties and issues were the same as in the case in which it is proposed to prove the testimony of such deceased witness. And it is true that the main issue in the seduction case, in which the deceased witness testified, is entirely different from the main question in the present case. But as to the particular evidence here offered, the issue in the two cases is identical—that is, the genuineness of the letters. The parties were the same in both cases, and the particular issue upon which the evidence was offered was the same, and we think this satisfies the rule, and distinguishes this case from that of *Davis v. State,* 17 Ala. 354, and is not in conflict with

the general doctrine there stated.    See Wigmore on Evidence, vol. 2, § 1387.  The letters shown to have been written by the defendant to the deceased were properly admitted.    These letters showed that an intimacy had existed between the defendant and the deceased, the nature and character of such intimacy, and therefore tended to show a motive on the part of the defendant for wanting to get rid of deceased after entering into an unwilling marriage with her.    Evidence which tends to show motive, however slight, is proper to be considered by the jury.    The two letters numbered 15 and 16, written by the defendant to the witness Mae Grice, when taken in connection with other evidence in the case, were properly admitted in evidence.

The theory of the defense was, that the deceased took her own life without agency on the part of defendant. In support of this theory any evidence tending to show that the deceased came to her death by her own act was competent.    And along this line, we think it was permissible for the defense to show by competent evidence any acts, conduct, or declarations on the part of the deceased evidencing a mind and purpose of destroying her own life.    And in this connection it was competent for the defendant as a witness in his own behalf to testify to a threat made by his wife to take her own life when he told her of his contemplated trip to the country with his sister and Mae Grice.    There were other objections to evidence, but we think what we have already said above in a general way will prove sufficient for the purpose of another trial, without discussing the many exceptions in detail.

That portion of the oral charge excepted to, wherein the court said to the jury, "There is no contradiction within the proper meaning of that term where two testify that they were present and heard a conversation, and one testifies that he did hear a certain portion of the conversation, and the other testifies that he did not hear that portion of it," was erroneous.  In such a case, there may or may not be a contradiction.    If both should testify that they heard all of the conversation, and one should testify to a particular statement having been

made in the conversation, and the other testify that he did not hear any such statement made, then a conflict in the testimony might be said to exist. The charge would have been proper, if the court had said under such circumstances a conflict did not necessarily arise, and leaving the question of a conflict to the determination of the jury.

The court in its oral charge erred in the statement that "A probability of the defendant's innocence exists only when the testimony showing his innocence is stronger than that showing his guilt." A probability of innocence may exist when no testimony has been offered on the part of the prosecution showing his guilt. That portion of the oral charge excepted to, in which the court said to the jury, "The administering of such a drug as strychnine is a crime of such heinous quality that the law carries with it all the elements of murder in the first degree if given knowingly, intentionally and with intent to kill," when referred to the evidence in the case, and taken in connection with the fact of the death of the party to whom it was charged the defendant did administer the poison, was free from error.

Written charge No. 1, given at the instance of the State, was abstract and should have been refused. There was no evidence of any dying declarations by the deceased. The statements made by the deceased, as we have before said, were properly admitted in evidence, not as dying declarations, but as being of the *res gestae.* Charge No. 2, given at the request of the State, was free from error. Charge No. 3, given for the State, was erroneous. If the charge means to state that a probability of innocence, and a reasonable doubt, is the same thing, and, as we construe it, it can mean nothing else, that is not a fact, nor is it the law. It has often been stated, that a reasonable doubt may exist, although there may not be a probability of innocence.

The defendant requested in writing a large number of charges which were refused. This portion of the transcript which sets out or undertakes to set out the charges requested by the defendant is poorly arranged, and is not free from confusion. In the state of the rec-

ord, and in view of the fact that the necessities of the case do not require a discussion of the charges in detail, we feel justified in referring to them in a general way. Charges that seek to give undue prominence to particular parts of the evidence in the case, and such as are abstract, argumentative or misleading, and charges that are nothing more than duplicates of other given charges, are always properly refused. We content ourselves with saying this much and no more, with reference to the charges, as we think a prolonged discussion would serve no important end or purpose.

For the errors pointed out, the judgment must be reversed and the cause remanded. The defendant will remain in custody until discharged according to law.

Reversed and remanded.

McClellan, C.J., Haralson and Denson, J.J., concurring.